# EXHIBIT A

**"Carmelo" Daryl Murray, acting pro se**
**2 Bell Lane**
**Burlington, NJ 08016**
**609-481-7900**

| | |
|---|---|
| DARYL "Carmelo" MURRAY,<br><br>                           Plaintiff<br><br>         v.<br><br>AMAZON.COM SERVICES LLC,  and<br>John and Jane Does (1-5)<br><br>                  Defendants | **SUPERIOR COURT OF NEW JERSEY**<br>**LAW DIVISION, BURLINGTON COUNTY**<br><br>CIVIL ACTION<br><br>DOCKET NO.:  **BUR-L-_____-22**<br><br>**FIRST COMPLAINT**  AND JURY DEMAND |

Plaintiff Daryl "Carmelo" Murray (hereinafter, "Plaintiff") by way of this Complaint, filed as a matter of right against the above-named Defendants says as follows:

## ALLEGATIONS OF LAW

1.     This is a civil action seeking damages against the Defendants for intentional wrongdoing and acts of negligence under common law and for violations of the New Jersey Law Against Discrimination N.J.S.A. 10:5-1 et seq, (hereinafter, "LAD").

2.     In <u>Wilson v. Wal-Mart Stores</u>, 158 <u>N.J.</u> 263, 271 (1999)], the Court held that:

[W]hen an individual is subject to a continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases." <u>Id</u>.

## JURISDICTION AND VENUE

3.     Jurisdiction before the Superior Court of New Jersey is proper because (a) the causes of action arise under the laws of the State of New Jersey, (b) Plaintiff resides in, the Defendants conduct business in, and all acts complained of, and damages alleged, occurred in the State of New Jersey and Burlington County.

## THE PARTIES & FACT WITNESSES

4.      Plaintiff Daryl "Carmelo" Murray ("Plaintiff" or "Murray") is an adult male individual, race-black, and citizen of the United States, and a resident of the Township of Burlington, Burlington County, New Jersey.

5.      Plaintiff is a member of a protected class in that his race is black, sex-male, and is over the age of 40.

6.      Defendant Amazon.com Services LLC. ("Amazon" or "AmazonACY2") is a foreign Limited Liability Company registered and licensed to do business in New Jersey.  Amazon maintains a place of business at 1101 E. Pearl Street, Burlington County, State of New Jersey.

7.      Defendant Amazon engaged agents that acted at its direction and for its benefit. As a result thereof, Amazon is responsible for its own and for the actions of its agents under the doctrine of respondent superior and/or vicarious liability.

8.      Defendant Amazon is a self-insured employer for workers' compensation claims, N.J.S.A. 34:15-77,  under the Workers' Compensation Law (N.J.S.A. 34:15-1 et seq.) ("WCA").

9.      AmCare is a medical facility within Amazon fulfillment centers which provides immediate care to Amazon employees that are injured while working.  Typically, when a work injury is reported to an Amazon supervisor or manager the employee is sent to AmCare for treatment.

10.     Plaintiff is unaware of the true names of the defendants sued herein under the fictitious names John and Jane Does 1-5 ("Does"), and will amend this Complaint to sue such parties by their actual names at such time as Plaintiffs become aware of them.

11.     On December 2, 2019, Plaintiff Murray began employment as a Fulfillment Center Associate ("FC Associate") and a base rate of $16.10 per hour.

12.     Plaintiff was scheduled to work a minimum of 40 hours per week, Wednesday through Saturday, from 7:00AM to 5:00PM, plus mandatory and/or voluntary overtime which averaged approximately ten (10) hours per week.

13.     Mathew Kelly, ("Matt Kelly") is a male individual who was employed by Amazon and at all times material hereto acted as Plaintiff Murray's manager.

14.     Joseph W. Parker III, is a male individual employed by Amazon from Sept. 2019 to June 2021 as a WHS Specialist. Mr. Parker worked in AmCare and on January 4, 2020 provided medical treatment to Plaintiff.

15.     Michael Tomaszewski, is a male individual employed by Defendant Amazon from September 2019 to at least January 6, 2020, as an Onsite Medical Representative. Mr. Tomaszewski worked in AmCare and on January 4, 2020 provided medical treatment to Plaintiff.

16.     Jessica Ji, is a female individual who at all times material hereto was employed by Amazon as Sr. Human Resources Assistant.

17.     Kam Williams, is a female individual who at all times material hereto was employed by Amazon as an Area Manager and Operations Manager. From October 17, 2020 to October 25, 2020, Kam Williams was designated as Plaintiff's direct manager.

**Plaintiff's Reported Work Related Injuries and Physical Disabilities**.

18.     Prior to beginning employment with Defendant Amazon, Plaintiff did not suffer from any preexisting injuries to his lower extremities.

19.     Prior to beginning employment with Amazon on Dec. 3, 2019, Plaintiff was physically fit and qualified to perform the essential functions and assigned duties of an FC Associate.

20.     On or about December 19, 2019, December 20, 2019, and December 26, 2019, while in the course of performing assigned work duties as a FC Associate for Defendant Amazon, Plaintiff

sustained injury to his left foot, and specifically injury to Plaintiff's 3rd and 4th metatarsal when a 5-10 lb. package accidentally fell from Plaintiff's workstation table an impacted Plaintiff's left foot causing Plaintiff to suffer permanent nerve damage, great physical pain, and mental anguish.

21.     Almost on a daily basis, Matt Kelly, would assign Plaintiff the physically demanding task of working as a "Waterspider."  The Waterspider's job duties, included but were not limited to, carrying heavy bundles of corrugated boxes, pulling, pushing heavy steel carts weighing in excess of 500-pounds, constant bending, squatting, kneeling, loading and restocking thousands of corrugated boxes in the Outbound Packing stations of various FC Associates who were assigned to perform Outbound scanning and packing.

22.     On certain slow days, Plaintiff's essential job function assignment was limited to mundane tasks such as a carrying a broom and dustpan and walking around the facility sweeping up dust and dirt and/or manually wiping down workstations and/or scrapping tape off the floors.

23.     On at least two separate occasions between December 19, 2019 and December 30, 2019, Plaintiff submitted physical disability accommodation requests to Defendant Amazon by speaking directly to Matt Kelly and verbally requesting Mr. Kelly to not assign Waterspider duties to Plaintiff on consecutive days/shifts so as to permit Plaintiff's body adequate time to heal and physically recover from previous days'/shifts' physical disabilities arising out of and in the course of Plaintiff performing the Defendant's assigned Waterspider duties.

24.     On January 3, 2020,  Matt Kelly assigned Plaintiff to Water-spider duties.

25.     On January 4, 2020, Defendant Amazon denied Plaintiff's request for a physical disability accommodation when at the start of Plaintiff's shift, Matt Kelly, assigned Plaintiff to Waterspider duties. Subsequently, at about 8:30 AM, while in the course of performing Waterspider

tasks and duties, Plaintiff sustained injuries to his Left-knee, left-leg, and left-foot. Plaintiff continued

to work through the disability of the left-leg/knee/foot injury until the 10:15 AM lunch break.

26.     On January 4, 2020 at about 10:45 AM, Plaintiff visited Defendant Amazon's

AmCare office at which time Plaintiff reported his left-leg/knee and left-foot injuries to Joseph

Parker III and Michael Tomaszewski, who administered first aid to Plaintiff.

27.     On January 4, 2020, after Joseph Parker III, administered first aid to Plaintiff,

Plaintiff requested to be examined by Amazon's Workers' Compensation ("WC") physician and

Amazon denied Plaintiff's request for a medical examination with an authorized physician.

28.     On January 4, 2020, after receiving first aid from AmCare facility, Matthew Kelly,

reassigned Plaintiff from Waterspider duties and directed Plaintiff to try to finish his shift as an

Outbound Packer.  Immediately, after logging into the assigned Outbound Packing workstation, and

assuming duties this time as an Outbound Packer/Scanner, Plaintiff immediately aggravated and

reinjured Plaintiff's left-leg/knee/foot while lifting and packing ten to fifteen 40-lb bags of cat litter.

Plaintiff immediately reported his physical disability and injury to Matt Kelly who then escorted

Plaintiff back to the AmCare.

29.     On January 4, 2020, upon reinjuring and aggravating Plaintiff's left-leg/knee/foot

injuries, Plaintiff again requested to be examined by Amazon's authorized WC Physician.

30.     On January 7, 2020, Amazon, authorized Plaintiff to be examined by Dr. Paul

DeJoseph, of WORKNET Occ Med-Mount Holly, New Jersey. Midway through Dr. Paul DeJoseph's

attempted physical examination of Plaintiff, Plaintiff objected to Dr. DeJoseph's inappropriate,

unethical, and unprofessional conduct and behavior resulting in the termination of the exam.

31.     On January 8, 2020, Defendant Amazon, authorized Plaintiff to be examined by Dr. Mark Nepp, WorkNet Occ Med-Pennsauken, New Jersey. Dr. Nepp examined Plaintiff and diagnosed: "ICD-10 S83.92XA Sprain of unspecified site of left knee, initial encounter."

32.     On January 8, 2020 at the conclusion of Dr. Nepp's examination, Dr. Nepp, directed Plaintiff to return on January 13, 2020 for x-rays. Dr. Nepp completed a Healthcare Provider Request for Information ("RFI") Form and Work Status Summary which stated Current Work Restrictions:

    a)     "20lbs Max/Lift 10 lbs 34-66%   **Starting: 1/8/20  Continuing"**;

    b)     "1-3 Hours Walking          <u>Starting: 1/08/20  Continuing"</u>;  and

    c)     **"Work Status: <u>Return to Work with Restrictions, as of 1/8/20</u>."**

33.     On January 8, 2020, Plaintiff reported to work at Amazon and provided Amazon's Human Resources staff with Dr. Nepp's January 8, 2020 dated Work Status Summary, RFI,  and at which time Plaintiff requested a light duty work restriction physical disability accommodation. <u>See</u> **Exhibit "A"** attached hereto and incorporated by reference.

34.     On January 8, 2020, Defendant Amazon denied Plaintiff's light duty accommodation request because of his sex-male and/or in retaliation for seeking to file a Worker's Compensation claim pursuant to the WCA. <u>See</u> **Exhibit "B"** (Amazon Temporary Work Placement Acknowledgement) attached hereto and incorporated by reference.

35.     Plaintiff was informed Joseph Parker there were no light duty positions available to offer Plaintiff and according to, Jessica Ji, because Plaintiff was seeking Workers' Compensation.

36.     On or about January 15, 2020, as a direct result of Amazon's refusal to provide Plaintiff with authorized medical treatment for his physical disability caused by the injuries which arose out of and in the course of his employment with Defendant Amazon, Plaintiff was compelled to seek medical treatment from his private family physician and unauthorized other medical specialists.

37.      On January 16, 2020, Amazon refused to accommodate Plaintiff's request for a physical disability accommodation in the form of a light duty work restriction job assignment which was supported by the January 15, 2020 letter from Dr. Wilbert Warren.  See **Exhibit "C"** attached hereto and incorporated by reference.

38.      Plaintiff has not expressly elected to be bound by the provisions of Article II of WCA (N.J.S.A. 34:15-7 et seq.) with respect to the injuries plead in paragraphs 20 - 28.

39.      Defendant Amazon has not expressly nor impliedly elected to be bound by the provisions of Article II of WCA (N.J.S.A. 34:15-7 et seq.) with respect to the injuries and accidents plead in paragraphs 20 thru 29. In fact, Amazon denies that Plaintiff's reported injuries arose out of and in the course of his employment with Defendant Amazon. See **Exhibit "D"**, Sedgwick Claims denial from Michael Delporte, attached hereto and incorporated by reference as.

40.      In Pappano v. Shop Rite of Pennington, Inc., 213 N.J. Super. 305, 307-308 (1986), the Appellate Division held "accepting voluntarily paid benefits and filing a claim petition, even after age eighteen, does not constitute a binding election of statutory benefits. Such an election is binding only after a determination has been made by the Division of Workers' Compensation entitling the worker to statutory benefits."

41.      The New Jersey Division of Workers' Compensation has not determined whether Plaintiff is entitled to statutory benefits pursuant to the WCA, with respect to the injuries plead in paragraphs 19 to 29.

42.      As a result of Amazon's failure to offer Plaintiff a physical disability accommodation, Plaintiff sustained lost wages, including over-time for the period January 5, 2020 through July 4, 2020 and October 28, 2020 through January 14, 2022 in the amount of approximately $86,700.00.

43.     As a result of Amazon's unlawful failure to offer Plaintiff a physical disability accommodation, Plaintiff has sustained out-of-pocket medical expenses, co-pays, deductibles, and other unpaid work-related injury medical expenses in the amount of approximately $3,650.00.

## ONGOING CONTINUAL, CUMULATIVE PATTERN OF TORTUOUS CONDUCT AND OTHER ACTS OF RETALIATION DISCRIMINATION

44.     Beginning on January 13, 2020 and continuing to the present, Defendant Amazon has subjected Plaintiff to hostile work environment, including intentional acts of retaliation against Plaintiff by frivolously denying Plaintiff's workers' compensation claims for medical treatment and temporary benefits based upon the unsubstantiated frivolous defense the Plaintiff's reported bodily injuries did not arise out of and in the course of Plaintiff's employment with Defendant Amazon.

### COUNT ONE
### VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION - N.J.A.C. 13:13-2.5(b)(1)(ii)
**(Failure to Accommodate Physical Disability - Request for Light Duty Job Assignment)**
**For Periods July 5, 2020 thru October 10, 2020 )**
**(Against Defendant Amazon)**

45.     Plaintiff repeats the previous allegations as though fully set forth herein.

46.     N.J.S.A. 10:5-1 to -49, requires an employer to make a reasonable accommodation for an employee's handicap/disability if the employee can perform the essential functions of their job with a reasonable accommodation.

47.     In *Richter v. Oakland Bd. of Educ.*, 246 N.J. 507, the Supreme Court held:

[T]o best implement the legislative intent [to eradicate discrimination] we conclude that an employer's inaction, silence, or inadequate response to a reasonable accommodation request is an omission that can give rise to a cause of action. . . . Stated otherwise, a failure-to-accommodate claim is not dependent on causing harm to the employee through an adverse employment action. And, certainly, the employer of an employee who suffers consequences from the employer's failure to accommodate should not escape LAD liability merely because those consequences do not fit neatly into a definition of adverse employment action. Indeed, while a lack of demonstrable consequences — whether in the form of an adverse action, of injuries like those sustained by Richter, or of some other

type — might affect the damages to which an affected employee might be entitled, an employer's failure to accommodate is itself an actionable harm. . . . Indeed, given that providing a reasonable accommodation is an employer's obligation, see N.J.A.C. 13:13-2.5(b), it makes little sense to include the adverse-employment-action element, even in form. The better, and simpler, course is to recognize that an adverse employment action is not an element of a failure-to-accommodate claim.

48.     In _Richter v. Oakland Bd. of Educ._, 246 N.J. 507, the New Jersey Supreme Court addressed whether Richter's failure-to-accommodate claim is barred by the WCA's exclusive remedy provision. In concluding the answer is "no," the court emphasized and held that:

> [T]he two legislative acts provide relief for separate wrongs and can co-exist in harmony, with the purposes of each fulfilled. Indeed, the two statutory schemes, harmonized, operate to prevent double recovery. With double recovery averted, there is no possible conflict. Thus, the full-throated pursuit of remedies available under the LAD for actionable disability discrimination may proceed unencumbered by the WCA exclusivity bar.

49.     On or about June 20, 2020, Plaintiff telephoned Amazon's Disability Leave Services at 1-888-892-7180 (Option 1) to request the status of his prior request for a reasonable accommodation, specifically assignment to a light-duty work restriction position as medically supported by the January 8, 2020 Work Status Summary Report prepared by Amazon's authorized Worker's Compensation physician, Dr. Mark Nepp of WorkNet-Occ Med Pennsauken.

50.     As of July 5, 2020 Defendant Amazon failed to accommodate Plaintiff's disability.

51.     At all times material hereto, Plaintiff's light-duty accommodation request was reasonable in nature and was not an undue burden on Amazon.

52.     At all times pertinent hereto, the Defendant Amazon failed to reasonably accommodate Plaintiff's disability, nor did Amazon engage in an "interactive process" with Plaintiff to determine how his medical condition and/or physical disability could be accommodated.

53.     Such acts constitute unlawful discrimination on the basis of handicap/disability and failure to accommodate in violation of the New Jersey Law Against Discrimination.

54.     Plaintiff was able to perform the essential functions of the FC Associate job with a reasonable accommodation (light-duty restriction) as specified in Dr. Mark Nepp's January 8, 2020 Work Status Summary Report.

55.     Defendant Amazon was aware of Plaintiff's need for a reasonable physical disability accommodation upon receipt of Dr. Nepp's January 8, 2020 dated Work Status Report (Ex. "A") and upon receipt of Dr. Wilbert Warren's January 15, 2002 Medical Necessity letter. (Ex. "B")

56.     Upon information and belief, as early as March 2020 thru as late as July 5, 2020, there was an accommodation available that would have allowed Plaintiff to perform the essential functions of the FC Associate, specifically, in direct response to the SARS-COVID-2 ("Covid-19") pandemic, Amazon installed Covid-19 Thermal Camera Checkpoints ("TCC") at the main security entrance of the ACY2 facility for the purpose of screening possible Covid-19 related feverish employees. The TCC was staffed by a FC Associate whose job functions were:  (1) to sit in a chair behind a plexiglass protected enclosure; Monitor a display showing the body temperature of each person entering the facility; (2)  If the TCC display showed an employee with a temperature above 100.4 Degrees Fahrenheit, then the TCC Monitor/Associate was to direct the feverish employee to report to the Human Resources Kiosk; and (3) provide a new protective face mask to any associate entering the facility without a face mask. Based on the January 8, 2020 Work Status Report of Dr. Nepp and the January 15, 2020 Medical Necessity Letter from Dr. Wilbert Warren, Plaintiff was qualified to perform the essential functions of  TCC Monitor/Associate.

57.     At no time between July 5, 2020 thru October 24, 2020, did the Respondent offer Plaintiff the TCC Monitor position in an effort to satisfy Plaintiff's accommodation request. As such, Defendant wrongfully and unlawfully denied Plaintiff's physical disability accommodation request.

58.     As a proximate result of Defendant Amazon's negligence and discriminatory conduct, Plaintiff suffered and continues to suffer extreme mental distress, humiliation, embarrassment, anguish, and emotional and physical injuries, as well as economic losses, including loss of income, loss of benefits, physical permanent injuries and other severe financial losses.

59.     Said conduct, taken by and/or directed and/or sanctioned by upper management, was egregious, part of a continual cumulative pattern of tortuous conduct, willful, and wanton, intentional, and in reckless disregard of Plaintiff's rights for which punitive damages are appropriate.

**WHEREFORE**, Plaintiff requests the entry of judgment in his favor against Defendants, severally and jointly, for compensatory damages, costs of suit, triple damages, interest and such other further relief as this court deems just and appropriate.

**COUNT TWO**
**Constructive Discharge In Violation of  Law Against Discrimination (N.J.S.A. 10:5-1 to -42)**
**For the Period July 5, 2020 to October 10, 2020**
**(Against Defendant Amazon )**

60.     Plaintiff repeats the previous allegations as though fully set forth herein.

61.     On or about June 2020, Defendant notified Plaintiff that his short-term approved leave of absence would end, effective July 5, 2020 and that Plaintiff's employment would be terminated if Plaintiff failed to report to work after the expiration of his approved leave of absence.

62.     On August 1, 2020, Amazon terminated Plaintiff's medical health insurance.

63.     As of July 5, 2020, Plaintiff effectively resigned, not in good standing, as a direct result of Defendant's failure to approve Plaintiff's request for a physical disability accommodation and refusal to provide medical treatment and temporary total disability benefits compensation pursuant to Amazon's statutory requirement to do so pursuant to the WCA.

64.     Defendant Amazon's failure to approve Plaintiff's request for a physical disability accommodation and refusal to provide medical treatment and temporary benefits prior to August 1, 2020, deliberately made or allowed Plaintiff's working conditions to become so intolerable that a reasonable employee in Plaintiff's position has no other choice but to quit.

65.     Defendant Amazon, and its agents and employees, created discriminatory and intolerable working conditions for Plaintiff.

66.     As a direct, legal and proximate result of the discrimination, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

67.     Defendant's unlawful actions were part of a continual cumulative pattern of tortuous conduct, intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be

free from discrimination based on his physical disability and his filing a Workers' Compensation claim.

68.     As of July 5, 2020, Defendant Amazon did not contact Plaintiff to address his prior complaints and concerns and Defendant Amazon had not contacted Plaintiff to engage in an interactive process to satisfy Plaintiff's light-duty physical disability accommodation request.

69.     As of July 5, 2020, Defendant Amazon took steps to terminate Plaintiff's health insurance benefits coverage and employment, effective August 1, 2020.

70.     Defendant Amazon knowingly permitted conditions of Plaintiff's employment to exist that were so intolerable that Plaintiff was forced to resign his job. Prior to July 5, 2020, Plaintiff did everything necessary and reasonable to remain employed rather than simply resign.

71.     As of August 1, 2020, Plaintiff was not an employee of Defendant Amazon.

**WHEREFORE**, Plaintiff requests the entry of judgment in his favor against Defendants, severally and jointly, for compensatory damages, costs of suit, triple damages, interest, and such other further relief as this court deems just and appropriate in a total amount not to exceed $75,000.

### COUNT THREE
**Breach of Implied Covenant of Good Faith and Fair Dealing**
**(Against Defendant Amazon )**

72.     Plaintiff repeats the previous allegations as though fully set forth herein.

73.     Plaintiff's oral at-will employment agreement is subject to an implied covenant of good faith and fair dealing by which Defendant Amazon promised to give full cooperation to Plaintiff in his performance under the employment agreement and to refrain from any act that would prevent or impede Plaintiff from performing under the conditions of the agreement.

74.     Defendant Amazon breached the implied covenant of good faith and fair dealing with regard to Plaintiff by (a) failing and refusing to ensure Plaintiff's workplace was free from violence,

intimidation, gender bias, discrimination, and harassment; (b) failing to provide Plaintiff with timely medical treatment and total temporary benefits as statutorily set forth in the WCA; (c) retaliating against Plaintiff after Plaintiff filed, on June 30, 2020 a LAD Complaint against Amazon; (d) retaliating against Plaintiff after Plaintiff filed in January 2020 a WCA Claim Petition pursuant to the WCA; and (e) retaliating against Plaintiff after Plaintiff filed, on October 15, 2020, a WCA Motion for Medical Treatment and Temporary Benefits ("MMT") related to Plaintiff's work related injuries suffered as of January 4, 2020.

75.     As a proximate cause of Defendant Amazon's breach of the covenant of good faith and fair dealing, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiff requests the entry of judgment in his favor against Defendants, severally and jointly, for compensatory damages, costs of suit, triple damages, interest, and such other further relief as this court deems just and appropriate in a total amount not to exceed $75,000.

**COUNT FOUR**
**Unlawful Discharge and Retaliation In Violation of**
**Law Against Discrimination (<u>N.J.S.A.</u> 10:5-1 to -42) and/or <u>N.J.S.A.</u> 34:15-39.1.**
**(Against Defendant Amazon )**

76.     Plaintiff repeats the previous allegations as though fully set forth herein.

77.     On June 30, 2020, Plaintiff filed an employment discrimination complaint against Defendant Amazon with the New Jersey Division on Civil Rights, Docket No. EC05WB-68011.

78.     On or about September 18, 2020, Plaintiff telephoned Defendant Amazon's Leave and Disability Services department to discuss Amazon's refusal to approve his previous light duty work restriction accommodation request and to discuss Amazon's termination of Plaintiff's medical health benefits.

79.     On October 15, 2020, Plaintiff again made or attempted to make a claim for workers' compensation when he filed a MMT pursuant to the WCA.

80.     On October 17, 2020, Plaintiff resumed employment at Defendant Amazon after Defendant Amazon reinstated the employment status of Plaintiff and belatedly approved Plaintiff to return to employment with a light-duty work restriction.

81.     On October 25, 2020, Defendant Amazon wrongfully terminated Plaintiff in retaliation for making and/or attempting to make a claim for workers' compensation and/or for filing an employment discrimination complaint pursuant to  (N.J.S.A. 10:5-1 to -42).

82.     Defendant Amazon's alleged non-discriminatory legitimate business reason for terminating Plaintiff's employment on October 25, 2020, is that Plaintiff allegedly violated Defendant's Anti-Harassment Policy on or about September 18, 2020, when Plaintiff, while constructively discharged, spoke from his home by telephone with an Amazon Leave & Disability Services Team Representative, identified herein as John Doe-1.

83.     Plaintiff denies violating Amazon's anti-harassment policy and further alleges that any statements Plaintiff allegedly made to John Doe-1, on September 18, 2020, were, in fact, made while Plaintiff was not employed by Amazon nor under Amazon's agency, supervision, or control.

84.     Plaintiff further alleges any inappropriate and/or allegedly harassing statements overheard by John Doe-1, during the September 18, 2020 phone conversation, were, in fact, statements made by Plaintiff that were directed to Plaintiff's house guests and not directed to John Doe-1 as Plaintiff terminated the phone call.

85.     Defendant Amazon's actions in failing to engage in an interactive process to satisfy Plaintiff's light-duty work restriction accommodation request during the period January 4, 2020 through October 10, 2020 and/or constructively discharging Plaintiff as of July 5, 2020, and

subsequently terminating Plaintiff's employment on October 25, 2020, were all causally related to Plaintiff exercise of his rights protected under the LAD and the WCA.

**WHEREFORE** Plaintiff requests the following relief against Defendants, severally, and jointly as follows:

a.   For reinstatement and/or restoration of Plaintiff's employment pursuant to N.J.S.A. 34:15-39.1

b.   For an award of compensatory damages including lost wages and benefits, and emotional distress damages, in the amount to be proven at trial.

c.   For an award of exemplary and punitive damages to the extent allowed by law and in an amount according to proof;

d.   For prejudgment interest on all amounts claimed;

e.   For attorneys' fees, expert fees, and costs of suit herein pursuant to statute or as otherwise may be allowed by law.

f.   For such other relief as this Court may deem just and proper.

Dated: October 24, 2022
_____
DARYL MURRAY, Plaintiff acting pro se.

## CERTIFICATION PURSUANT TO R. 4:5-1(b)(2)

The undersigned hereby states the matter in controversy between the parties herein is also the subject of the following action:

Daryl Murray v. Amazon, Division of Law and Public Safety, Division on Civil Rights; NJDCR Docket No. EC05WB-68011; (LAD claims asserted for unlawful discriminatory disparity in pay and working hours and for Failure to Accommodate for the period from Dec. 3, 2019 thru July 5, 2020). The Aforesaid claims are not asserted or at issue in the instant Complaint.

Further, I know of no other parties that should be made a part of this lawsuit. I recognize my continuing obligation to file and serve on all parties and the Court an Amended Certification if there is a change in the facts stated in the complaint I have filed in this action. I further certifiy that confidential personal identifiers have been redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

## DEMAND FOR ANSWERS TO INTERROGATORIES PURSUANT TO R. 4:17-2

Plaintiff hereby demands Defendants serve certified answers to Plaintiff's First Set of Interrogatories Directed to Defendants, which are being served with the original Complaint.

## JURY DEMAND

The undersigned Plaintiff hereby demands trial by a jury of twelve (12) on all of the triable issues of this Complaint, pursuant to New Jersey Court Rules 1:8-2(b) and 4:35-1(a).

Dated: October 24, 2022

_____
DARYL MURRAY, Plaintiff acting pro se.

## **VERIFICATION**

I, DARYL "CARMELO" MURRAY, of full age, herby certify:

I am the Plaintiff in the above captioned civil action. I have read the Complaint and certify the allegations contained in the Complaint are ture to the best of my personal knowledge, information and belief.  I ceritify that the foregoing statements are true. I am aware that if any statement made herein is willfully false, I am subject to punishment.

_____

Dated: October 24, 2022                            DARYL MURRAY, Plaintiff acting pro se.

# EXHIBIT "A"

Date  01/08/20               **WORKNET Occ Med-Pennsauken**               Page    1
9370 Route 130 N.
Suite 200
Pennsauken, NJ  08110
(856) 662-0660, Fax: (856) 662-0798

## Work Status Summary

Company:    Amazon Fulfillment Ctr (NJ)-ACY2 - NS -        Employee:    Carmelo Daryl Murray
2529 1101 East Pearl Street                                            2 Bell Lane
Burlington, NJ                                                         Burlington, NJ  08016

Attention:    Robert Moffa              Ident:      xxx-xx-7556         DOB:  8/11/64
Telephone:    (848) 999-3769            Department:
Fax:          (609) 772-8918            Job Title:
              robmoffa@amazon.com                                      Phone: (609) 360-0666
Provider:     Nepp, Mark  D.O.
Visit Date:   1/08/20   Time In: 10:40AM  Out:       Purpose:    WC Injury New

### Insurance Information

Sedgwick CMS-Phila                      Contact:
Po Box 14517                            Telephone:  (215) 231-3900 Ext:
Lexington, KY  40512-4517               Fax:        (215) 231-3800

### Presenting Problem

Date of Injury:        1/04/20     Case Number: 2020-00002        Claim Number:

### Diagnosis

ICD-10    S83.92XA      Sprain of unspecified site of left knee, initial encounter

### Current Work Restrictions

20lbs Max/Lift 10lbs 34-66%                          Starting:  1/08/20    Continuing
1-3 Hrs Walking                                      Starting:  1/08/20    Continuing

### Work Status

Work Status:   Return to Work with Restrictions, as of  1/08/20

### Follow Up

Follow-up Appointments:   1/13/20 at 8:20AM        Wc Injury Follow-Up/nn        Introcaso, Lucian  MD

# amazon

## Healthcare Provider Request for Information (RFI) Form

*Please return completed form to the site by your next scheduled shift.*

robmoffa@amazon.com

**PATIENT/EMPLOYEE NAME:** _Carmelle Murray_

**DATE OF BIRTH:** _8-11-64_

**SITE NAME:** _ACY2_

**DATE:** _1-8-20_

**DATE OF NEXT APPOINTMENT:**

Healthcare Provider: The intent of this form is to obtain information needed to identify limitations, restrictions and/or qualifying disabilities to be considered for accommodation. This form also seeks information necessary to comply with the Occupation Safety and Health Act (OSHA) regulations. You may also use this form to suggest additional considerations.

### SECTION I: PATIENT/EMPLOYEE RETURN TO WORK STATUS

| 1 | The impairment/injury is: ☐ Work-related       ☐ Non-Work Related       ☐ Undetermined<br><br>If work-related, please indicate diagnosis: _____ |
|---|---|
| 2 | Is the patient/employee safe to return to work?<br>☐ YES, without restrictions<br>☒ YES, with restrictions<br>☐ NO, unable to return to work | Return to Work Date: _1/8/2020_<br>Date: _1/8/2020_ to _1/9/2020_ (please complete section II)<br>Date: _____ to _____ (please complete section II) |

### SECTION II: PHYSICAL RESTRICTIONS RELATED TO ESSENTIAL JOB FUNCTIONS

*Please note any physical limitations or restrictions that may interfere with performance of job duties and/or may require workplace modifications.*

| Job Task | Time — Please indicate the maximum amount of time in hours the patient/employee is allowed to perform each task. | | | | | | | Limitation Period | | Permanent Limitation |
|---|---|---|---|---|---|---|---|---|---|---|
| | Up to 5 lbs. | Up to 10 lbs. | Up to 15 lbs. | Up to 20 lbs. | Up to 30 lbs. | Up to 40 lbs. | Up to 50 lbs. | Start Date | End Date | |
| Lift/Carry: (L, R, B) | | | ✓ | | | | | | | ☐ |
| Push/Pull: (L, R, B) | | | ✓ | | | | | | | ☐ |

| Job Task | | Time — Please indicate the maximum amount of time in hours the patient/employee is allowed to perform each task. | | | | | | | Limitation Period | | Permanent Limitation |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | Start Date | End Date | |
| Repetitive Motion of Hands: | (L, R, B) | | | | | | | | | | ☐ |
| Simple Hand Grip (<15 lbs.): | (L, R, B) | | | | | | | | | | ☐ |
| Forceful Hand Grip (>15 lbs.): | (L, R, B) | | | | | | | | | | ☐ |
| Overhead Reach: | (L, R, B) | | | | | | | | | | ☐ |
| At Shoulder Reach: | (L, R, B) | | | | | | | | | | ☐ |
| Below Shoulder Reach: | (L, R, B) | | | | | | | | | | ☐ |
| Head/Neck Rotation (> 20°): | (L, R, B) | | | | | | | | | | ☐ |
| Bend/Twist | | | | | | | | | | | ☐ |
| Kneel | | | | | | | | | | | ☐ |
| Crawl | | | | | | | | | | | ☐ |
| Squat | | | | | | | | | | | ☐ |
| Sit | | 8 | | | | | | | 1/8/2024 | | ☐ |
| Stand | | 4 | | | | | | | 1/8/2028 | | ☐ |
| Walk | | | | | | | | | 1/8/20/2 | | ☐ |
| Climb Stairs (5 or more steps) | | | | | | | | | 1/8/20/2 | | ☐ |
| Climb Step Stool (4 or less steps) | | | | | | | | | | | ☐ |
| See | | | | | | | | | | | ☐ |
| Hear | | | | | | | | | | | ☐ |
| Talk | | | | | | | | | | | ☐ |

| 1 | Please answer the following if employee would like to be considered for a modification related to hours of work:<br>Can the patient/employee work more than 40 hours within a week?      YES      NO<br><br>Patient/employee may work limited hours: _____ hours/day _____ hours/week |
|---|---|

**amazon**                    **Healthcare Provider Request for Information (RFI) Form**
*Please return completed form to the site by your next scheduled shift.*

| | |
|---|---|
| **2** | Please answer the following if job duties include driving commercial machinery such as a delivery van, forklift, reach truck, scissor lift, or truck: <br><br> Does the patient/employee have any limitations or restrictions that may interfere with safe and effective operation of commercial machinery such as a delivery van, forklift, reach truck, scissor lift, or truck? ☐ YES  ☐ NO <br><br> If YES, please describe limitations or restrictions: |
| **3** | Please describe any therapeutic devices required to be worn/used while at work that might interfere with safe and effective performance of job duties and/or require job modifications.  No |
| **4** | **Answer only** if this is a work-related injury: Was patient/employee prescribed medication or directed to take over-the-counter medication at prescription strength as a result of this injury? Note: DO NOT disclose the name or type of medication. ☑ YES  ☐ NO |
| **5** | **Answer only** if this is a work-related injury: Did any of the following occur as a part of a work-related injury? <br><br> ☐ Fracture (including chipped tooth)  ☐ Amputation (with or without bone loss)  ☐ Chronic irreversible disease <br> ☐ Loss of Consciousness  ☐ Punctured eardrum  ☑ None |
| **6** | Does the patient/employee have a condition or impairment that limits his/her ability to perform his/her job duties? <br><br> ☑ No (Assumes general illness or injury not rising to the level of an impairment or disability) <br> ☐ Yes. If yes, what major life activities or major bodily functions are affected? Check all that apply: <br><br> **MAJOR LIFE ACTIVITIES:** <br> ☐ Caring for Self  ☐ Sleeping  ☐ Speaking  ☐ Thinking  ☐ Hearing <br> ☐ Performing manual tasks  ☐ Walking  ☐ Breathing  ☐ Communicating  ☐ Lifting <br> ☐ Seeing  ☐ Standing  ☐ Learning  ☐ Working  ☐ Reading <br> ☐ Eating  ☐ Bending  ☐ Concentrating <br> ☐ Other (list or describe): _____ <br><br> **MAJOR BODILY FUNCTIONS:** <br> ☐ Immune System  ☐ Bowel  ☐ Brain  ☐ Endocrine <br> ☐ Normal Cell Growth  ☐ Bladder  ☐ Neurologic  ☐ Reproductive Functions <br> ☐ Digestive  ☐ Respiratory  ☐ Circulatory <br> ☐ Other (list or describe): _____ |
| **7** | Does the patient/employee have any other work-related limitations or restrictions not listed above (e.g. physical, sensory, psychiatric) that may interfere with performance of job duties and/or require job modifications? ☐ YES  ☑ NO <br><br> IF YES, please describe the limitations or restrictions. |
| **8** | Additional Notes: |

**SECTION III. HEALTHCARE PROVIDER SIGNATURE AND CONTACT INFORMATION**

MnHc   Lappo                         *[signature]*              1/8/2020
HEALTHCARE PROVIDER NAME/TITLE:         HEALTHCARE PROVIDER SIGNATURE:         DATE

ADDRESS: 9370 Route 130 North Suite 200

CITY, STATE: Pennsauken, NJ                                ZIP: 08110

PHONE: (856) 662-0660                    FAX: (856) 662-0798

The Genetic Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting, or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. "Genetic information," as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

# EXHIBIT "B"

# Temporary Work Placement Acknowledgement

| | | | |
|---|---|---|---|
| Associate Name | Murray,Daryl | Report Date | 01/08/2020 |
| Associate ID | 105801775 | Manager | Kelly,Matthew |
| Restriction Start Date | 01/08/2020 | Restriction End Date | 01/13/2020 |
| Shift Length (hrs) | 10.0 | Modified Shift Length (hrs) | - |
| Department | Outbound- Pack | Site Code | ACY2 |

Dear Daryl,

This letter confirms our discussion on 01/08/2020, regarding the injury related to your workers' compensation claim that is temporarily affecting your ability to perform the essential functions of your current job. We received documentation from your healthcare provider regarding your current restriction and also reviewed the essential functions of your current job.

The information provided by your health care provider stated the following restrictions, found on page 3. DM. ( WORK STATUS SUMMARY -WORKNET )

After reviewing the physical restrictions outlined by your health care provider information, we have determined that you are eligible for to be placed in a temporary assignment enabling you to perform essential job functions for a temporary period.

The following temporary work placement will be provided:

| | |
|---|---|
| X | There are no positions that meet the Associates restrictions available at this time |
| | Restrictions have been matched with a job transfer. The following modifications will be made in order to the job in order to meet the limitations. |
| | Restrictions have been matched within your current role. The following modifications will be made in order to the job in order to meet the limitations. |

Associate is able to work:

| | |
|---|---|
| X | Full Duty Hours |
| | Partial Duty Hours |

| | |
|---|---|
| Job | No Job Needed |
| Shift | |
| Job Modifications | |
| Pay Rate | Will remain the same |
| Notes | |

As a reminder, this Temporary Work Placement offer will begin on 01/08/2020 and will continue until additional information is provided by your physician, until you have reached a permanent and stationary or maximum medical improvement status or until you are taken off of work. At that time, we will review and re-evaluate whether there are additional options for you in conjunction with your workers' compensation adjuster.

Throughout the duration of this temporary assignment, please inform your supervisor or AMCARE if there are any changes to your current work limitations or need for further job modifications. Amazon may request that you submit updated medical documentation or we may reserve the right to request information from your physician directly to evaluate any changes in your status. Amazon will provide any training required to do this temporary assignment, if necessary.

Please sign the acknowledgement below to indicate your agreement or refusal to this offer we are implementing on your behalf and return to AMCARE.

**If we do not hear from you within seven (7) days from the date of this letter, we will assume that you have refused the offer to return to work. Please understand that if you do not accept Amazon's offer and you are not eligible for any other leave, it may affect your employment status and your right to certain workers' compensation or other disability benefits.**

The Healthcare Provider Request for Information form and support documentation have been reviewed with the Associate. The Associate:

| | |
|---|---|
| ✓ | Agrees with the recommendations and request for modified duty as outlined by their healthcare provider |
| | Does not agree with recommendations provided by their healthcare provider and requires further consult. |
| | Is uncertain about recommendations provided by their healthcare provider and requires further consult. |

Associate Signature

Date   1-8 2020

# EXHIBIT "C"



**PHA**
**ADULT MEDICINE**
DELIVERING THE CARE YOU NEED

Text PHA to 55469

1740 South Street, Suite 300, Philadelphia, PA 19146
TEL: 215-732-0876
FAX: 215-732-1812
WEBSITE: www.phaadultmedicine.com
Download: Healow App for Patient Portal

### MEDICAL NECESSITY LETTER

TO:    Whom It May Concern

RE:    Daryl Murray    08/11/1964
       2 Bell Lane
       Burlington NJ 08016

RE:    Work restriction

DATE:  1/15/2020

Hello,

For the next two weeks, I recommend to avoid heavy lifting, pulling, pushing, carrying objects more than 30 lbs. Avoid repetitive twisting. Restrictions is effective from 1/15/2020 to 1/27/2020.

Sincerely,

Dr. Wilbert Warren

# EXHIBIT "D"

Sedgwick CMS-Philadelphia

P O Box 14517

Lexington, Ky  40512-4517



sedgwick®

**Phone:** (844)695-0335  **Fax:** (215)231-3800

01/20/2020

Carmelo C. Murray
2 Bell Lane
Burlington, NJ  08016

| | |
|---|---|
| **SCMS Client**: | Amazon.Com, Inc. |
| **Claimant Name**: | Carmelo C. Murray |
| **Date of Loss**: | 01/04/2020 |
| **Claim Number**: | 30204249823-0001 |

Dear Mr. Murray:

Sedgwick Claims Management Services administers Workers' Compensation claims on behalf of the above captioned client.

After careful consideration of all available information, it is our opinion that your claim for Workers' Compensation benefits is not compensable.

Should you have additional information which could alter our opinion, please submit the information to my attention.

If you have received a pharmacy card as a part of the processing of this claim, you should be aware that this card is no longer valid for medication for this alleged Workers' Compensation injury.

If you have any questions, please contact the examiner at the number listed above.

Sincerely,

Michael Delporte
Claims Examiner

Sedgwick manages claims for American Zurich Insurance Company on behalf of Amazon.com, Inc..



*c27649070.339-1981*

Save   Print   Clear



New Jersey Judiciary
Civil Practice Division

# Civil Case Information Statement (CIS)

Use for initial Law Division Civil Part pleadings (not motions) under Rule 4:5-1.
Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the
black bar is not completed, or attorney's signature is not affixed.

| For Use by Clerk's Office Only | | | | |
|---|---|---|---|---|
| Payment type ☐ check<br>☐ charge<br>☐ cash | Charge/Check Number | Amount<br>$ | Overpayment<br>$ | Batch Number |

| Attorney/Pro Se Name<br>Carmelo Daryl Murray | Telephone Number<br>609-481-7900   ext. | County of Venue<br>Burlington |
|---|---|---|

| Firm Name (if applicable) | Docket Number (when available)<br>BUR-L- |
|---|---|

| Office Address - Street<br>2 Bell Lane | City<br>Burlington | State<br>NJ | Zip<br>08016 |
|---|---|---|---|

| Document Type<br>Civil Action Complaint and Summons | Jury Demand<br>■ Yes      ☐ No |
|---|---|

| Name of Party (e.g., John Doe, Plaintiff)<br>Daryl "Carmelo" Murray | Caption<br>Daryl Murray v. Amazon.com Services LLC, et al |
|---|---|

Case Type Number (See page 3 for listing)  005

Are sexual abuse claims alleged?                                    ☐ Yes      ■ No

Does this case involve claims related to COVID-19?         ■ Yes      ☐ No

Is this a professional malpractice case?                           ☐ Yes      ■ No

 If "Yes," see N.J.S.A. 2A:53A-27 and applicable case law
 regarding your obligation to file an affidavit of merit.

Related Cases Pending?                                                   ■ Yes      ☐ No

 If "Yes," list docket numbers
Murray v. Amazon, Div. off Law and Public Safety,
NJDCR Docket No. EC05WB-68011

Do you anticipate adding any parties (arising out of same          ■ Yes      ☐ No
transaction or occurrence)?

Name of defendant's primary insurance company (if known)    ☐ None     ■ Unknown

| **The Information Provided on This Form Cannot be Introduced into Evidence.** |
|---|

Case Characteristics for Purposes of Determining if Case is Appropriate for Mediation

Do parties have a current, past or recurrent relationship?    ■ Yes    ☐ No
  If "Yes," is that relationship:
  ■ Employer/Employee    ☐ Friend/Neighbor    ☐ Familial    ☐ Business
  ☐ Other (explain) _____

Does the statute governing this case provide for payment of fees    ■ Yes    ☐ No
by the losing party?

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition.

Do you or your client need any disability accommodations?    ☐ Yes    ■ No
  If yes, please identify the requested accommodation:

Will an interpreter be needed?    ☐ Yes    ☐ No
  If yes, for what language?

**I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).**

Attorney/Self-Represented Litigant Signature: _____

# Civil Case Information Statement (CIS)

Use for initial pleadings (not motions) under *Rule* 4:5-1

## CASE TYPES

(Choose one and enter number of case type in appropriate space on page 1.)

### Track I - 150 days discovery

| | |
|---|---|
| 151 | Name Change |
| 175 | Forfeiture |
| 302 | Tenancy |
| 399 | Real Property (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | Book Account (debt collection matters only) |
| 505 | Other Insurance Claim (including declaratory judgment actions) |
| 506 | PIP Coverage |
| 510 | UM or UIM Claim (coverage issues only) |
| 511 | Action on Negotiable Instrument |
| 512 | Lemon Law |
| 801 | Summary Action |
| 802 | Open Public Records Act (summary action) |
| 999 | Other (briefly describe nature of action) |

### Track II - 300 days discovery

| | |
|---|---|
| 305 | Construction |
| 509 | Employment (other than Conscientious Employees Protection Act (CEPA) or Law Against Discrimination (LAD)) |
| 599 | Contract/Commercial Transaction |
| 603N | Auto Negligence – Personal Injury (non-verbal threshold) |
| 603Y | Auto Negligence – Personal Injury (verbal threshold) |
| 605 | Personal Injury |
| 610 | Auto Negligence – Property Damage |
| 621 | UM or UIM Claim (includes bodily injury) |
| 699 | Tort – Other |

### Track III - 450 days discovery

| | |
|---|---|
| 005 | Civil Rights |
| 301 | Condemnation |
| 602 | Assault and Battery |
| 604 | Medical Malpractice |
| 606 | Product Liability |
| 607 | Professional Malpractice |
| 608 | Toxic Tort |
| 609 | Defamation |
| 616 | Whistleblower / Conscientious Employee Protection Act (CEPA) Cases |
| 617 | Inverse Condemnation |
| 618 | Law Against Discrimination (LAD) Cases |

## Track IV - Active Case Management by Individual Judge / 450 days discovery

| | |
|---|---|
| 156 | Environmental/Environmental Coverage Litigation |
| 303 | Mt. Laurel |
| 508 | Complex Commercial |
| 513 | Complex Construction |
| 514 | Insurance Fraud |
| 620 | False Claims Act |
| 701 | Actions in Lieu of Prerogative Writs |

## Multicounty Litigation (Track IV)

| | |
|---|---|
| 271 | Accutane/Isotretinoin |
| 281 | Bristol-Myers Squibb Environmental |
| 282 | Fosamax |
| 285 | Stryker Trident Hip Implants |
| 291 | Pelvic Mesh/Gynecare |
| 292 | Pelvic Mesh/Bard |
| 293 | DePuy ASR Hip Implant Litigation |
| 296 | Stryker Rejuvenate/ABG II Modular Hip Stem Components |
| 299 | Olmesartan Medoxomil Medications/Benicar |
| 300 | Talc-Based Body Powders |
| 601 | Asbestos |
| 624 | Stryker LFIT CoCr V40 Femoral Heads |
| 625 | Firefighter Hearing Loss Litigation |
| 626 | Abilify |
| 627 | Physiomesh Flexible Composite Mesh |
| 628 | Taxotere/Docetaxel |
| 629 | Zostavax |
| 630 | Proceed Mesh/Patch |
| 631 | Proton-Pump Inhibitors |
| 632 | HealthPlus Surgery Center |
| 633 | Prolene Hernia System Mesh |
| 634 | Allergan Biocell Textured Breast Implants |
| 635 | Tasigna |
| 636 | Strattice Hernia Mesh |
| 637 | Singulair |
| 638 | Elmiron |

If you believe this case requires a track other than that provided above, please indicate the reason on page 1, in the space under "Case Characteristics".

**Please check off each applicable category**

☐ **Putative Class Action**          ☐ **Title 59**                    ☐ **Consumer Fraud**