## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DARYL "Carmelo" MURRAY,<br><br>                        Plaintiff<br><br>    v.<br><br>AMAZON.COM SERVICES LLC;<br>LUCIAN J. INTROCASO, Individually and<br>as Medical Director for Worknet<br>Occupational Medicine - Pennsauken;  John<br>and Jane Does (1-5),  The New Jersey Board<br>of Medical Examiners ("BME"),<br><br>                        Defendants | **Case No.: 1:22-cv-07340-KMW-MJS**<br><br>**On Removal from the**<br>**SUPERIOR COURT OF NEW JERSEY**<br>**LAW DIVISION, BURLINGTON COUNTY**<br>CIVIL ACTION<br>DOCKET NO.:  **BUR-L-002009-22**<br><br>**SECOND AMENDED COMPLAINT and**<br>**DEMAND FOR TRIAL BY JURY;** |

Pursuant to Fed.R.Civ.P. 15(a)(1)(B), Plaintiff Daryl "Carmelo" Murray (hereinafter, "Plaintiff"), by way of this Second Amended Complaint, filed as a matter of course within 21-days after service of [ECF# 15] Motion to Dismiss against the above-named Defendants says as follows:

### ALLEGATIONS OF LAW

1.       This is a civil action seeking damages against the Defendants for intentional wrongdoing and acts of negligence under common law and for violations of the New Jersey Law Against Discrimination N.J.S.A. 10:5-1 to -50, (hereinafter, "LAD").

2.       In Wilson v. Wal-Mart Stores, 158 N.J. 263, 271 (1999)], the Court held that:

[W]hen an individual is subject to a continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases." Id.

3.       In Lally v. Copygraphics, 173 N.J.Super. 162, 172-73, (App.Div. 1980), aff'd, 85 N.J. 668, (1981) the Supreme Court affirmed "the Appellate Division's determination, that:

[A] plaintiff has a common law right of action for wrongful discharge based upon an alleged retaliatory firing attributable to the filing of a workers' compensation claim and that, in addition to, or in lieu of, a judicial cause of action for civil redress, there are available both statutory penal sanctions in a disorderly persons proceeding in municipal court and administrative relief before the Commissioner of Labor and Industry, who has concurrent jurisdiction over such a dispute. Id.

## JURISDICTION AND VENUE

4.      Jurisdiction before the Superior Court of New Jersey is proper because (a) the causes of action arise under the laws of the State of New Jersey, (b) Plaintiff resides in, the Defendants conduct business in, and all acts complained of, and damages alleged, occurred in the State of New Jersey and Burlington County and/or Camden County, New Jersey.

## **THE PARTIES & FACT WITNESSES**

5.      Plaintiff Daryl "Carmelo" Murray ("Plaintiff" or "Murray") is an adult male individual, race-black, and citizen of the United States, and a resident of the Township of Burlington, Burlington County, New Jersey.

6.      Plaintiff is a member of a protected class in that his race is black, sex-male, is over the age of 40, is physically disabled: (a) due to bilateral carpel tunnel syndrome; (b) from various Amazon work-related medical conditions diagnosed as Morton's Neuroma and Patellar Tendonitis and is therefore considered to be a person suffering from a "disability" under the LAD.

7.      Plaintiff is also a member of a protected class in that Plaintiff has claimed or attempted to claim workmen's compensation benefits [N.J.S.A. 34:15-39.1] and Plaintiff has opposed any practices or acts forbidden by the LAD [N.J.S.A. §10:5-12(d)].

8.      Defendant Amazon.com Services LLC ("Amazon" or "Amazon ACY2") is a foreign Limited Liability Company registered and licensed to do business in New Jersey.  Amazon maintains a place of business and the ACY2 Fulfillment Center located 1101 E. Pearl Street, Burlington County, State of New Jersey.

9.      Defendant Amazon engaged agents that acted at its direction and for its benefit. As a result, thereof, Amazon is responsible for its own and for the actions of its agents under the doctrine of respondent superior and/or vicarious liability.

10.     Defendant Amazon is a self-insured employer for workers' compensation claims, N.J.S.A. 34:15-77, under the Workers' Compensation Law (N.J.S.A. 34:15-1 to -146) ("WCA").

11.     AmCare is a medical facility within Amazon fulfillment centers which provides immediate care to Amazon employees that are injured while working. Typically, when a work injury is reported to an Amazon supervisor or manager the employee is sent to AmCare for treatment.

12.     Defendant Lucian J. Introcaso, (hereinafter "Introcaso"), is a male individual doing business as Worknet Occupational Medicine - Pennsauken (hereinafter, "WorkNet" or "Worknet Occ Medicine-Pennsauken"), who is licensed by the State of New Jersey to practice medicine, whose NPI[1]# is 1386795680, is the Medical Director for Worknet Occupational Medicine located at 9370 N. Crescent Blvd, Suite 200, Pennsauken, New Jersey 08108, and who is a domiciled resident of the State of New Jersey with present and/or former residences believed to be located at 225 Haddon Ave, Apt No. 3301, Haddon Township, New Jersey 08108 and/or 2 Crestmont Ln, Collingswood, New Jersey 08108 and/or located at 355 Stratford Ave., Haddon Township, New Jersey 08108.

   a)     Defendant, New Jersey Board of Medical Examiners ("BME"), is a public entity and/or governmental licensing agency within the State of New Jersey, located at 140 East Front St., 2nd Floor, Trenton, New Jersey 08625, and whose function includes, but is not limited to, regulating the licensing of hospitals, physicians, and other health care providers in the State of New Jersey. Defendant, BME, is a governmental licensing agency in the State of New Jersey.

---

[1] NPI denotes National Provider Identifier Standard. An NPI is an unique identification number for covered health care providers. An NPI is a unique identification number for covered health care providers, created to help send health information electronically more quickly and effectively

13.    Plaintiff is unaware of the true names of the Defendants sued herein under the fictitious names John and Jane Does 1-5 ("Does"), and will amend this Complaint to sue such parties by their actual names at such time as Plaintiffs become aware of them.

14.    On December 3, 2019, Plaintiff Murray began employment as a Fulfillment Center Associate ("FC Associate") and a base rate of $16.10 per hour.

15.    Plaintiff was scheduled to work a minimum of 40 hours per week, Wednesday through Saturday, from 7:00AM to 5:00PM, plus mandatory and/or voluntary overtime which averaged approximately ten (10) hours per week.

16.    Mathew Kelly, ("Matt Kelly") is a male individual who was employed by Amazon and at all times material hereto acted as Plaintiff Murray's manager.

17.    Joseph W. Parker III, is a male individual employed by Amazon from Sept. 2019 to June 2021 as a WHS Specialist. Mr. Parker worked in AmCare and on January 4, 2020 provided medical treatment to Plaintiff.

18.    Michael Tomaszewski, is a male individual employed by Defendant Amazon from September 2019 to at least January 6, 2020, as an Onsite Medical Representative. Mr. Tomaszewski worked in AmCare and on January 4, 2020 provided medical treatment to Plaintiff.

19.    Jessica Ji, is a female individual who at all times material hereto was employed by Amazon as Sr. Human Resources ("HR") Assistant and **Jareth Antona**, is a male individual who at all relevant times was employed by Amazon as a Sr. Human Resources Assistant and whose duties included providing field HR Support, handing employee relations issues, and acting as a consult to managers in connection to decisions to terminate Plaintiff's employment.

20.        Kam Williams, is a female individual who at all times material hereto was employed by Amazon as an Area Manager and Operations Manager. From October 17, 2020 to October 25, 2020, Kam Williams was designated as Plaintiff's direct manager.

21.        Michael Delporte, is a male individual who at all times material hereto was employed by Sedgwick CMS-Philadelphia ("Sedgwick") as a Claims Examiner. Upon information, knowledge, and belief, Sedgwick is Defendant Amazon's Third-Party Administrator ("TPA") for Amazon's self-insured New Jersey Workers' Compensation Insurance plan.

**<u>Plaintiff's Reported Work Related Injuries and Physical Disabilities</u>**.

22.        Prior to beginning employment with Defendant Amazon, Plaintiff did not suffer from any preexisting injuries to his lower extremities.

23.        Prior to beginning employment with Amazon on Dec. 3, 2019, Plaintiff was physically fit and qualified to perform the essential functions and assigned duties of an FC Associate.

24.        On or about December 19, 2019, December 20, 2019, and December 26, 2019, while in the course of performing assigned work duties as a FC Associate for Defendant Amazon, Plaintiff sustained injury to his left foot, and specifically injury to Plaintiff's 3rd and 4th metatarsal when a 5-10 pound package accidentally fell from Plaintiff's workstation table and impacted Plaintiff's left foot causing Plaintiff to suffer permanent nerve damage, great physical pain, and mental anguish.

25.        Defendant Amazon knew or should have known the hazardous conditions existing at the Amazon ACY2 Fulfillment Center facility involved an unreasonable risk of serious bodily harm to FC Associates working within the workplace while not wearing safety "Steel toe" shoes/boots.

26.     Defendant Amazon knew that its failure to require all FC Associates to wear steel Toe safety shoes was substantially certain to result in injury to its employees, including Plaintiff.

27.     Almost on a daily basis, Matt Kelly, would assign Plaintiff the physically demanding task of working as a "Water spider."  The Water spider's job duties, included but were not limited to, carrying heavy bundles of corrugated boxes, pulling, pushing heavy steel carts weighing in excess of 500-pounds, constant bending, squatting, kneeling, loading and restocking thousands of corrugated boxes in the Outbound Packing stations of various FC Associates who were assigned to perform Outbound scanning and packing.

28.     On certain slow days, Plaintiff's essential job function assignment was limited to mundane tasks such as a carrying a broom and dustpan and walking around the facility sweeping up dust and dirt and/or manually wiping down workstations and/or scrapping tape off the floors.

29.     On at least two separate occasions between December 19, 2019 and December 30, 2019, Plaintiff submitted physical disability accommodation requests to Defendant Amazon by speaking directly to Matt Kelly and verbally requesting Mr. Kelly to not assign Water spider duties to Plaintiff on consecutive days/shifts so as to permit Plaintiff's body adequate time to heal and physically recover from previous days'/shifts' physical disabilities arising out of and in the course of Plaintiff performing the Defendant's assigned Water spider duties.

30.     On January 3, 2020, Matt Kelly assigned Plaintiff to Water-spider duties.

31.     On January 4, 2020, Defendant Amazon denied Plaintiff's request for a physical disability accommodation when at the start of Plaintiff's shift, Matt Kelly, assigned Plaintiff to Water spider duties. Subsequently, at about 8:30 AM, while in the course of performing Waterspider tasks and duties, Plaintiff sustained injuries to his Left-knee, left-leg, and left-foot. Plaintiff continued to work through the disability of the left-leg/knee/foot injury until the 10:15 AM lunch break.

32.     On January 4, 2020, at about 10:45 AM, Plaintiff visited Defendant Amazon's AmCare office at which time Plaintiff reported his left-leg/knee and left-foot injuries to Joseph Parker III and Michael Tomaszewski, who administered first aid to Plaintiff.

33.     On January 4, 2020, after Joseph Parker III, administered first aid to Plaintiff, Plaintiff requested to be examined by Amazon's Workers' Compensation ("WC") physician and Amazon denied Plaintiff's request for a medical examination with an authorized physician.

34.     On January 4, 2020, after receiving first aid from AmCare facility, Matthew Kelly, reassigned Plaintiff from Waterspider duties and directed Plaintiff to try to finish his shift as an Outbound Packer.  Immediately, after logging into the assigned Outbound Packing workstation, and assuming duties this time as an Outbound Packer/Scanner, Plaintiff immediately aggravated and reinjured Plaintiff's left-leg/knee/foot while lifting and packing ten to fifteen 40-lb bags of cat litter. Plaintiff immediately reported his physical disability and injury to Matt Kelly who then escorted Plaintiff back to the AmCare.

35.     On January 4, 2020, upon reinjuring and aggravating Plaintiff's left-leg/knee/foot injuries, Plaintiff again requested to be examined by Amazon's authorized WC Physician. Specifically, Plaintiff informed Jareth Antona and Joseph Parker of Plaintiff's desire to make a claim for workers' compensation benefits.

36.     On January 7, 2020, Amazon, authorized Plaintiff to be examined by Dr. Paul DeJoseph, of WorkNet Occ Medicine-Burlington, New Jersey. Midway through Dr. DeJoseph's attempted physical examination of Plaintiff, Plaintiff objected to Dr. DeJoseph's inappropriate, unethical, and unprofessional conduct and behavior resulting in the termination of the exam.

37.        On January 8, 2020, Defendant Amazon, authorized Plaintiff to be examined by

Dr. Mark Nepp, WorkNet Occ Med-Pennsauken, New Jersey. Dr. Nepp examined Plaintiff and

diagnosed: "ICD-10 S83.92XA Sprain of unspecified site of left knee, initial encounter."

38.        On January 8, 2020 at the conclusion of Dr. Nepp's examination, Dr. Nepp,

directed Plaintiff to return on January 13, 2020 for x-rays. Dr. Nepp completed a Healthcare Provider

Request for Information ("RFI") Form and Work Status Summary which stated Current Work

Restrictions:

    a)    "20lbs Max/Lift 10 lbs 34-66%  **Starting: 1/8/20  Continuing"**;
    b)    "1-3 Hours Walking      Starting: 1/08/20  Continuing";  and
    c)    **"Work Status: Return to Work with Restrictions, as of 1/8/20**."

39.        On January 8, 2020, Plaintiff reported to work at Amazon and provided Amazon's

Human Resources staff with Dr. Nepp's January 8, 2020 dated Work Status Summary, RFI, and at

which time Plaintiff requested a light duty work restriction physical disability accommodation. See

**Exhibit "A"** attached hereto and incorporated by reference.

40.        On January 8, 2020, Defendant Amazon denied Plaintiff's light duty

accommodation request.  See **Exhibit "B"** (Amazon Temporary Work Placement

Acknowledgement) attached hereto and incorporated by reference.

41.        On January 8, 2020, Joseph Parker informed Plaintiff there were no light duty

positions available to offer Plaintiff and according to, Jessica Ji, Amazon would not make a light-duty

work restriction/job restructuring accommodations available to Plaintiff because Amazon did not

make light duty accommodations available to associates seeking WCA benefits.

42.        On January 13, 2020, Plaintiff presented himself to WorkNet Occ Medicine

located in Pennsauken, New Jersey, for a scheduled follow up with Dr. Mark Nepp and to undergo an

X-ray of his left-knee. Instead, Plaintiff was not administered an X-rayed nor examined by any

WorkNet Physicians.  While Plaintiff waited in the exam room, Defendant Lucian J. Introcaso, was conducting a telephone conversation with Sedgwick CMS-Philadelphia in an effort to obtain authorization to perform X-ray of Plaintiff's left-knee. After waiting about 45-55 minutes in one of the exam rooms, Defendant Introcaso, entered the exam room, walked to the opposite side, turned his back to Plaintiff, began writing on a tablet, while informing Plaintiff that Amazon's third-party Workers' Compensation insurance administrator was declining to authorize the scheduled X-ray because the Insurance provider determined Plaintiff's injuries were not work-related.

43.     On or about January 15, 2020, as a direct result of Amazon's refusal to provide Plaintiff with authorized medical treatment for his physical disability caused by the injuries which arose out of and in the course of his employment with Defendant Amazon, Plaintiff was compelled to seek medical treatment from his private family physician and other unauthorized medical specialists.

44.     On January 16, 2020, Amazon refused to accommodate Plaintiff's request for a physical disability accommodation in the form of a light duty work restriction job assignment which was supported by the January 15, 2020 letter from Dr. Wilbert Warren.  See **Exhibit "C"** attached hereto and incorporated by reference.

45.     On January 17, 2020, Plaintiff filed three "Employee Claim-Petitions" with the Division of Workers' Compensation, Vicinage: Mount Holly, pursuant to the WCA as Claim Petition Nos.: 2020-1878; 2020-1879; and 2020-1881.  Each Claim Petition included a Demand "made for all records of medical treatment, examination and diagnostic studies (N.JA.C. 12:235-3.8(c)"

46.     On February 3, 2020, Defendant Amazon filed a Respondent's Answers to Claim Petitions and denied the Plaintiff's claimed bodily injuries are compensable under the WCA.

47.     Plaintiff has not expressly elected to be bound by the provisions of Article II of WCA (N.J.S.A. 34:15-7 et seq.) with respect to the injuries plead in paragraphs 24 - 35.

48.      Defendant Amazon has not expressly nor impliedly elected to be bound by the provisions of Article II of WCA (N.J.S.A. 34:15-7 et seq.) with respect to the injuries and accidents plead in paragraphs 24 thru 35. In fact, Amazon denies that Plaintiff's reported injuries arose out of and in the course of his employment with Defendant Amazon. See **Exhibit "D"**, Sedgwick Claims denial from Michael Delporte, attached hereto and incorporated by reference.

49.      In Pappano v. Shop Rite of Pennington, Inc., 213 N.J. Super. 305, 307-308 (1986), the Appellate Division held "accepting voluntarily paid benefits and filing a claim petition, even after age eighteen, does not constitute a binding election of statutory benefits. Such an election is binding only after a determination has been made by the Division of Workers' Compensation entitling the worker to statutory benefits."

50.      The New Jersey Division of Workers' Compensation has not determined whether Plaintiff is entitled to statutory benefits pursuant to the WCA, with respect to the injuries plead in s 24 to 35.

51.      As a result of Amazon's failure to offer Plaintiff a physical disability accommodation, Plaintiff sustained lost wages, including over-time for the periods January 5, 2020 through July 4, 2020 and October 28, 2020 through January 14, 2022 in the amount of approximately $86,700.00.

52.      As a result of Amazon's failure to offer Plaintiff a light-duty physical disability accommodation, Plaintiff has sustained out-of-pocket medical expenses, co-pays, deductibles, and other unpaid work-related injury medical expenses in the amount of approximately $3,650.00.

**ONGOING CONTINUAL, CUMULATIVE PATTERN OF TORTUOUS CONDUCT AND OTHER ACTS OF RETALIATION DISCRIMINATION**

53.      On January 16, 2020, Jessica Ji and  Jareth Antona, told Plaintiff that it was not Defendant Amazon's policy to offer light-duty work restriction accommodations to associates

claiming or attempting to claim WCA benefits. Ms. Ji, also admitted to Amazon's discriminatory policy of gender bias when she told Plaintiff that Defendant Amazon "routinely makes light-duty accommodations available to pregnant associates."

54.    Defendant Amazon's stated policy against offering light-duty work restriction accommodations to associates claiming or attempting to claim WCA benefits represents an ongoing continual pattern and practice of harassment and WCA retaliation discrimination disparately impacts Plaintiff and other Amazon FC Associates who suffer and sustain work-related injuries.

55.    On or about January 20, 2020, Defendant Amazon's, TPA, Sedgwick CMS-Philadelphia, notified Plaintiff that Defendant Amazon and Sedgwick was denying Plaintiff's WCA claimed injuries as non-work related. See attached hereto and incorporated by reference as Exhibit "D",  the January 20, 2020 letter from Michael Delporte, Claims Examine for Sedgwick.

56.    As a result of Defendant Amazon's bad faith frivolous denial of Plaintiff's WCA claims for medical treatment and temporary benefits, Plaintiff was forced to apply for an approved leave of absence and to accept Amazon's Short-term disability benefits which paid only 60% of Plaintiff's base salary before taxes (approximately $360.00 per week.).  Had Amazon acted in good faith and approved Plaintiff's WCA claims, Plaintiff would have been entitled to receive authorized medical treatment and 70% of Plaintiff Average Weekly Wage as of the time of his work-related injuries or approximately $856.00 weekly which was not subject to federal, state, and local taxes.

57.    Defendant Amazon was unjustly enriched by promulgating a fraudulent bad faith scheme of denying valid WCA claims submitted by Plaintiff and likely many other Amazon FC Associates and forcing Plaintiff and likely other Amazon Associates to accept the lower compensation paid through Amazon's Short-term Disability Benefits plan.

58.      From January 13, 2020 and continuing to the present, Defendant Amazon has subjected Plaintiff to a hostile work environment of harassment, WCA and LAD retaliation discrimination, including intentional acts of retaliation against Plaintiff by frivolously denying Plaintiff's WCA claims for medical treatment and temporary benefits, by failing to engage (with Plaintiff) in an interactive process and make a good faith effort to satisfy Plaintiff's request for a light-duty work restriction/job restructuring accommodation and primarily based upon the unsubstantiated frivolous defense that Plaintiff's reported and/or claimed bodily injuries did not arise out of and in the course of Plaintiff's employment with Defendant Amazon and all in retaliation for Plaintiff making and/or attempting to make a claim for workers' compensation benefits.

**COUNT ONE**
**ONGOING CONTINUAL VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION - N.J.A.C. 13:13-2.5(b)(1)(ii) and/or -(iv)**
**(Failure to Accommodate Physical Disability - Request for Light Duty Job Restructuring)**
**For Periods July 5, 2020 thru October 10, 2020 and Oct. 26, 2020 thru October 25, 2022)**
**(Against Defendant Amazon)**

59.      Plaintiff repeats the previous allegations as though fully set forth herein.

60.      N.J.S.A. 10:5-1 to -49, requires an employer to make a reasonable accommodation for an employee's handicap/disability if the employee can perform the essential functions of their job with a reasonable accommodation.

61.      In *Richter v. Oakland Bd. of Educ.*, 246 N.J. 507, the Supreme Court held:

[T]o best implement the legislative intent [to eradicate discrimination] we conclude that an employer's inaction, silence, or inadequate response to a reasonable accommodation request is an omission that can give rise to a cause of action. . . . (citations omitted) Stated otherwise, a failure-to-accommodate claim is not dependent on causing harm to the employee through an adverse employment action. And, certainly, the employer of an employee who suffers consequences from the employer's failure to accommodate should not escape LAD liability merely because those consequences do not fit neatly into a definition of adverse employment action. Indeed, while a lack of demonstrable consequences — whether in the form of an adverse action, of injuries like those sustained by Richter, or of some other type — might affect the damages to which an affected employee might be entitled, an employer's failure to accommodate is itself an actionable

harm. . . . Indeed, given that providing a reasonable accommodation is an employer's obligation, see N.J.A.C. 13:13-2.5(b), it makes little sense to include the adverse-employment-action element, even in form. The better, and simpler, course is to recognize that an adverse employment action is not an element of a failure-to-accommodate claim. Accordingly, we hold that a failure-to-accommodate claim under the LAD does not require a plaintiff to plead and demonstrate an adverse employment consequence as an element of a prima facie action.

[*Richter v. Oakland Bd. of Educ.*, 246 N.J. 507, at 531-532. (N.J. 2021)]

62.    In *Richter v. Oakland Bd. of Educ.*, 246 <u>N.J.</u> 507, the New Jersey Supreme Court addressed whether Richter's failure-to-accommodate claim is barred by the WCA's exclusive remedy provision. In concluding the answer is "no," the court emphasized and held that:

[T]he two legislative acts provide relief for separate wrongs and can co-exist in harmony, with the purposes of each fulfilled. Indeed, the two statutory schemes, harmonized, operate to prevent double recovery. With double recovery averted, there is no possible conflict. Thus, the full-throated pursuit of remedies available under the LAD for actionable disability discrimination may proceed unencumbered by the WCA exclusivity bar.

[Richter v. Oakland Bd. of Educ., 246 <u>N.J.</u> 507, at 544 (N.J. 2021)]

63.    On or about June 20, 2020, Plaintiff telephoned Amazon's Disability Leave Services at 1-888-892-7180 (Option 1) to request the status of his prior request for a reasonable accommodation, specifically assignment to a light-duty work restriction position as medically supported by the January 8, 2020 Work Status Summary Report prepared by Amazon's authorized Worker's Compensation physician, Dr. Mark Nepp, of WorkNet-Occ Med Pennsauken.

64.    As of July 5, 2020, Defendant Amazon failed its statutory duty and obligations under the LAD to engage in an interactive effort to attempt to reach a reasonable accommodation for Plaintiff's request for a light duty work restriction due to his physical disabilities.

65.    At all times material hereto, Plaintiff's light-duty accommodation request was reasonable in nature and was not an undue burden on Amazon.

66.      At all times pertinent hereto, the Defendant Amazon remained silent, failed to reasonably, promptly, and adequately accommodate Plaintiff's disability request(s) for a light-duty job duty assignment, nor did Amazon engage in an "interactive process" with Plaintiff to determine how his medical condition and/or physical disability could be accommodated by job restructuring.

67.      Such acts constitute unlawful discrimination on the basis of disability and failure to accommodate in violation of the LAD, and specifically N.J.A.C. 13:13-2.5(b)(1)(ii) and -(iv).

68.      Plaintiff was able to perform the essential functions of the FC Associate job with a reasonable accommodation (light-duty job restructuring/assignment) as specified in Dr. Mark Nepp's January 8, 2020 Work Status Summary  (See Exhibit "A");  Dr. Mark Nepp's January 8, 2020 dated "Amazon Healthcare Provider Request for Information (RFI) Form (See Exhibit "A"), and Dr. Wilbert Warren's January 15, 2020 Medical Necessity Letter.  See Exhibit "C" attached hereto and incorporated by reference.

69.      Defendant Amazon was aware of Plaintiff's need for a reasonable physical disability accommodation upon receipt of Dr. Nepp's January 8, 2020 dated Work Status Report (Ex. "A") and upon receipt of Dr. Wilbert Warren's January 15, 2002 Medical Necessity letter. (Ex. "C")

70.      Upon information and belief, as early as March 2020 thru as late as October 25, 2020, there was an accommodation available that would have allowed Plaintiff to perform the essential functions of the FC Associate. Specifically, in direct response to the SARS-COVID-2 ("Covid-19") pandemic, Amazon installed Covid-19 Thermal Camera Checkpoints ("TCC") at the main security entrance of the ACY2 facility for the purpose of screening possible Covid-19 related feverish employees. The TCC was staffed by a FC Associate whose job functions were:  (1) to sit in a chair behind a plexiglass protected enclosure; Monitor a display showing the body temperature of each person entering the facility; (2)  If the TCC display showed an employee with a temperature

above 100.4 Degrees Fahrenheit, then the TCC Monitor/Associate was to direct the feverish employee to report to the Human Resources Kiosk; and (3) provide a new protective face mask to any associate entering the facility without a face mask. Based on the January 8, 2020 Work Status Report of Dr. Nepp and the January 15, 2020 Medical Necessity Letter from Dr. Wilbert Warren, Plaintiff was qualified to perform the essential functions of TCC Monitor/Associate.

71.     Between March 2020 thru October 25, 2020, the Defendant did not offer nor assign Plaintiff to the TCC Monitor position in an effort to satisfy Plaintiff's continuous request for a light-duty work restriction accommodation. As such, Defendant wrongfully and unlawfully denied Plaintiff's physical disability accommodation request.

72.     As a proximate result of Defendant Amazon's intentional discriminatory conduct, Plaintiff suffered and continues to suffer extreme mental distress, humiliation, embarrassment, anguish, emotional and physical injuries, and distress, as well as economic losses, including loss of income, loss of benefits, physical permanent injuries and other financial losses.

73.     Said conduct, taken by and/or directed and/or sanctioned by upper management, was egregious, part of a continual cumulative pattern of tortuous conduct, willful, and wanton, intentional, and in reckless disregard of Plaintiff's rights for which punitive damages are appropriate.

**WHEREFORE**, Plaintiff requests the entry of judgment in his favor against Defendants, severally and jointly, for compensatory damages, costs of suit,  punitive triple damages, interest and such other further relief as this court deems just and appropriate.

**<u>COUNT TWO</u>**
**LAD Hostile Work Environment - Disparate Treatment Discrimination**
**In Violation of Law Against Discrimination (<u>N.J.S.A.</u> 10:5-1 to -42)**
**For the Period July 5, 2020 to October 26, 2020**
**(Against Defendant Amazon)**

74.     Plaintiff repeats the previous allegations as though fully set forth herein.

75.     On or about June 2020, Defendant notified Plaintiff that his short-term approved leave of absence would end, effective July 5, 2020 and that Plaintiff's employment would be terminated if Plaintiff failed to report to work after the expiration of his approved leave of absence.

76.     As of July 5, 2020, Plaintiff effectively resigned, not in good standing, as a direct result of Defendant's failure to approve Plaintiff's request for a light-duty physical disability accommodation and refusal to provide medical treatment and temporary total disability benefits compensation pursuant to Amazon's statutory requirement to do so pursuant to the WCA.

77.     On July 8, 2020, Plaintiff failed to report to work after the expiration of his approved leave of absence, and in direct response to Amazon's failure to schedule Plaintiff for light duty work.

78.     Defendant Amazon's failure to approve Plaintiff's request for a light-duty physical disability accommodation and refusal to provide medical treatment and temporary benefits prior to August 1, 2020, deliberately made or allowed Plaintiff's working conditions to become so intolerable that a reasonable employee in Plaintiff's position has no other choice but to quit.

79.     Defendant Amazon, and its agents and employees, created discriminatory and intolerable working conditions for Plaintiff.

80.     Prior to July 5, 2020, Plaintiff did everything necessary and reasonable to remain employed rather than simply resign.

81.     Defendant's unlawful actions were part of a continual cumulative pattern of tortuous conduct, intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on his physical disability and his filing a WCA and LAD claim.

82.     As of July 5, 2020, Defendant Amazon did not contact Plaintiff to engage with Plaintiff in an interactive process as part of a good faith effort to identify the precise limitations resulting from a disability and potential reasonable accommodations that could overcome those limitations to satisfy Plaintiff's light duty job restructuring accommodation request.

83.     As of July 5, 2020, Defendant Amazon unilaterally took steps to terminate Plaintiff's health insurance benefits coverage and employment, effective August 1, 2020.

84.     On August 1, 2020, Amazon terminated Plaintiff's medical health insurance.

85.     As of August 1, 2020, Plaintiff was not an employee of Defendant Amazon.

86.     On August 6, 2020, Plaintiff sent an email to Defendant Amazon and its agents Autumn Moore (moautm@amazon.com), Jessica Ji (Jssiji@amazon.com), Tiffany Roddy (Roddyt@amazon.com), and Stephen T. Fannon (sfannon@capehart.com) in which Plaintiff expressed his opposition and objection to Amazon's failure and refusal to approve his light-duty work restriction/job restructuring accommodation requests.

87.     On or about October 17, 2020, Plaintiff's employment was reinstated after Defendant Amazon belatedly approved a light-duty job restructuring accommodation almost nine (9) months after Plaintiff's initial January 8, 2020, request.  However, less than eight-days after Plaintiff attempted to file a WCA Motion for Medical Treatment and unpaid Temporary Benefits ("MMT"), Defendant Amazon immediately rescinded the Plaintiff's light-duty accommodation, terminated Plaintiff's employment effective October 25, 2020, and subjected Plaintiff to additional disparate treatment by denying Plaintiff the right to appeal the decision to terminate employment.

88.     Prior to his wrongful termination, Plaintiff's employment services rendered to Defendant Amazon, particularly when assigned to work as Waterspider, had been exemplary.

89.     As a direct, legal, and proximate result of the discrimination, Plaintiff has

sustained economic and emotional distress injuries, resulting in damages in an amount to be proven at

trial.

**WHEREFORE**, Plaintiff requests the entry of judgment in his favor against Defendants,

severally and jointly, for compensatory damages, costs of suit,  punitive triple damages, interest and

such other further relief as this court deems just and appropriate.

## COUNT THREE
### Breach of Implied Covenant of Good Faith and Fair Dealing (N.J.S.A. 12A:1-203)
### (Against Defendant Amazon)

90.     Plaintiff repeats the previous allegations as though fully set forth herein.

91.     Plaintiff's at-will employment agreement is subject to an implied covenant of good

faith and fair dealing by which Defendant Amazon promised to give full cooperation to Plaintiff in

his performance under the employment agreement and to refrain from any act that would prevent or

impede Plaintiff from performing under the conditions of the agreement.

92.     Defendant Amazon breached the implied covenant of good faith and fair dealing

with regard to Plaintiff by (a) failing and refusing to ensure Plaintiff's workplace was free from

violence, intimidation, gender bias, discrimination, and harassment; (b) continuously failing to

provide Plaintiff with timely medical treatment and total temporary benefits as statutorily set forth in

the WCA and as contractually implied with respect to N.J.S.A. §§ 34:15-8A and 34:15-9; (c)

retaliating against Plaintiff after Plaintiff filed, on June 30, 2020 a LAD Complaint against Amazon;

(d) retaliating against Plaintiff once Plaintiff attempted to make a claim pursuant to the WCA and

after Plaintiff filed on January 17, 2020 a WCA Claim Petition pursuant to the WCA;  (e) retaliating

against Plaintiff after Plaintiff filed, on October 19, 2020,  a WCA Motion for Medical Treatment and

Temporary Benefits ("MMT") related to Plaintiff's work related injuries suffered as of January 4,

2020; (f) continuously failing to offer Plaintiff the TCC Monitor job duty assignment as part of a good faith effort to attempt to satisfy Plaintiff's ongoing light-duty work restriction accommodation request; and denying Plaintiff the contractual right to internally appeal the alleged December 19, 2020 behavioral feedback warning and the October 25, 2020 employment termination allegedly arising out of a complaints of harassment, retaliation or discriminatory behavior.

93.     As a proximate cause of Defendant Amazon's breach of the covenant of good faith and fair dealing, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiff requests the entry of judgment in his favor against Defendants, severally and jointly, for compensatory damages, costs of suit,  punitive triple damages, interest and such other further relief as this court deems just and appropriate.

**COUNT FOUR**
**Unlawful Discharge and Retaliation In Violation of**
**Law Against Discrimination (N.J.S.A. 10:5-1 to -42) and/or N.J.S.A. 34:15-39.1.**
**(Against Defendant Amazon)**

94.     Plaintiff repeats the previous allegations as though fully set forth herein.

95.     On June 30, 2020, Plaintiff filed an employment discrimination complaint against Defendant Amazon with the New Jersey Division on Civil Rights, Docket No. EC05WB-68011.

96.     On or about September 18, 2020, Plaintiff telephoned Defendant Amazon's Leave and Disability Services department to discuss Amazon's refusal to approve his previous light duty work restriction accommodation request and to discuss Amazon's termination of Plaintiff's medical health benefits.

97.     On October 17, 2020, Plaintiff resumed employment at Defendant Amazon after Defendant Amazon reinstated the employment status of Plaintiff and belatedly approved Plaintiff to return to employment with a light-duty work restriction.

98.     On or about October 19, 2020, Plaintiff again made or attempted to make a claim for workers' compensation benefits when he filed a MMT pursuant to the WCA.

99.     On October 25, 2020, Defendant Amazon wrongfully terminated Plaintiff in retaliation for making and/or attempting to make a claim for workers' compensation and/or for filing an employment discrimination complaint pursuant to  (N.J.S.A. 10:5-1 to -42).

    a)     The decision to terminate Plaintiff's employment was made by Kam Williams in consultation with Jareth Antona, the Amazon Human Resources Assistant who as of January 4, 2020 had knowledge that Plaintiff was making a claim for WCA benefits.

100.     Defendant Amazon's alleged legitimate non-discriminatory reason for terminating Plaintiff's employment on October 25, 2020, is that Plaintiff allegedly violated Defendant's Anti-Harassment Policy on or about September 18, 2020, when Plaintiff, while constructively discharged, spoke from his home by telephone with an Amazon Leave & Disability Services Team Representative, identified herein as John Doe-1. Thus, Defendant Amazon's alleged legitimate non-discriminatory business reason for terminating Plaintiff's employment is not Amazon's true reason, but, rather a pretext for discrimination.

101.     On November 19, 2021, the New Jersey Deputy Director for Unemployment Insurance issued a Notice of Determination ("NOD") the Plaintiff's alleged actions on September 18, 2020 "do not constitute a willful and deliberate disregard of the standards of behavior your employer had a right to expect. Therefore, your discharge was not for misconduct connected with the work." See NOD dated 11/19/21 attached hereto as **Exhibit "E"** and incorporated by reference. Defendant Amazon did not appeal the NOD and therefore the NOD has been adjudicated as final.

102.     Plaintiff denies violating Amazon's anti-harassment policy and further alleges that any statements Plaintiff allegedly made to John Doe-1, on September 18, 2020, were, in fact, made while Plaintiff was not employed by Amazon nor under Amazon's agency, supervision, or control.

103.     Plaintiff further alleges any inappropriate and/or allegedly harassing statements overheard by John Doe-1, during the September 18, 2020, phone conversation, were, in fact, statements made by Plaintiff that were directed to Plaintiff's house guests and not directed to John Doe-1 as Plaintiff terminated the phone call.

104.     Defendant Amazon's actions in failing to engage in an interactive process to satisfy Plaintiff's light-duty work restriction accommodation request during the period January 4, 2020, through October 10, 2020 and/or constructively discharging Plaintiff as of July 5, 2020 through October 17, 2020, and subsequently formally terminating Plaintiff's employment on October 25, 2020, were all causally related to Plaintiff exercise of his rights protected under the LAD and WCA.

**WHEREFORE** Plaintiff requests the following relief against Defendants, severally, and jointly as follows:

a.    For reinstatement of Plaintiff's employment with a light-duty accommodation pursuant to <u>N.J.S.A.</u> 34:15-39.1 and N.J.A.C. 13:13-2.5(b)(1)(ii) and/or -(iv);
b.    Entry of judgment in Plaintiff's favor against Defendants, for compensatory damages, costs of suit, punitive triple damages, interest and such other further relief as this court deems just and appropriate.;
c.    Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);
d.    Ordering Defendant to take appropriate corrective action to stop and prevent retaliation at the workplace;
e.    Ordering Defendant to take appropriate corrective action to stop and prevent harassment at the workplace;
f.    Ordering Defendants to undergo anti-discrimination training;
g.    Ordering Defendants to undergo anti-retaliation training;
h.    Ordering Defendants to undergo anti-harassment training;
i.    Ordering Defendants to undergo workplace civility training;

## COUNT FIVE
### FRAUD - Fraudulent Concealment of Medical Records Evidence
### (Against Defendants Amazon, Lucian J. Introcaso,  John and Jane Does (2-5))

105.    Plaintiff repeats the previous allegations as though fully set forth herein.

106.    N.J.S.A. 34:15-128.4, states: " Except for medical or non-medical evaluations performed for the purposes of evaluating the permanency of an employee's disability requested by the employer or its insurance carrier, in any case of an individual seeking workers' compensation from an employer, it shall be unlawful for the employer, the workers' compensation insurance carrier of the employer, a health care provider treating or evaluating the individual in connection with the case, or a third party in the case, or their agents, to withhold from the individual any medical information they have regarding that individual which is requested by the individual, and if an individual requests the medical information, the individual shall not be charged fees in excess of the cost of providing copies of the information. " Id.

107.    On January 8, 2020, at the conclusion of Dr. Mark Nepp's physical examination of Plaintiff, Dr. Nepp completed a two-page document titled: "**Amazon Healthcare Provider Request for Information (RFI) Form**.  Section 1 of the RFI Form contained three checkboxes labeled: "The Impairment/injury is: ☒Work-Related        ☐Non-Work Related        ☐Undetermined." Only the Work-Related checkbox was marked by Dr. Nepp with an "X".   Dr. Nepp wrote out a New Jersey Prescription Blank ("NJPB") order for Motrim 600 mg which was never filled for Plaintiff.

a)    On January 13, 2020, at the conclusion of Plaintiff's pre-scheduled appointment at WorkNet Occ Medicine-Pennsauken, Plaintiff requested Defendants Introcaso and John and Jane Does (2-5) to provide Plaintiff with copies of all medical records created in connection to the January 13, 2020 office visit.

b)  On January 13, 2020, Defendant Introcaso provided Plaintiff with a January 13, 2020 dated Work Status Summary ("WSS") form and which falsely misrepresents and comments that Plaintiff's "PRPBLEM[sic] NOT WORK RELATED." A true copy of the Jan. 13, 2020, WSS form is attached hereto and incorporated by reference as Exhibit "M".

c)  On January 13, 2020, Defendant Introcaso provided Plaintiff with a January 13, 2020 dated Healthcare Provider Request for Information (RFI) Form which falsely misrepresents and states that Plaintiff's reported injuries are not work-related.  A true copy of the Jan. 13, 2020, RFI form is attached hereto and incorporated by reference as Exhibit "N".

d)  On January 13, 2020, Defendants Introcaso and John and Jane Does (2-5) intentionally wronged Plaintiff by refusing to provide Plaintiff with a copy of the January 13, 2020 dated "Supplemental Charting Notes." In fact, Plaintiff did not learn of the existence of the fraudulently altered January 13, 2020 Charting Notes medical records until eleven (11) months later, on November 2, 2020, when Defendant Amazon's attorney, Stephen Fannon, attached the fraudulent document to his Certification, filed in support of Defendant Amazon's Opposition to Plaintiff's Motion for Medical Treatment and Temporary Benefits.

e)  Defendant Introcaso, knew Plaintiff was required to return the January 13, 2020 dated WSS form to Defendant Amazon as proof Plaintiff attended the January 13, 2020 office visit authorized by Defendant Amazon and therefore intended Plaintiff, Defendant Amazon and Amazon's TPA, Sedgwick CMS-Philadelphia to rely on the misrepresentations contained in the January 13, 2020 WSS form.

f)   Because Defendant Amazon required Plaintiff to submit the January 13, 2020 WSS and RFI forms to Defendant Amazon's Human Resources Department, Plaintiff did and was compelled to rely upon the January 13, 2020 dated WSS form to confirm his required attendance for the Worknet office visit which was authorized by Defendant Amazon.

g)   As a result, of Plaintiff's reliance and Sedgwick's reliance upon the January 13, 2020 WSS form which contained the false statements of fact, Plaintiff sustained economic damages in excess of $3,600 for out of pocket costs to pay for medical expenses which Defendant Amazon and Sedgwick deemed as non-compensable under the WCA.

h)   Despite Plaintiff's request to be provided with a copy of all medical records created in connection with the January 13, 2020 visit to Worknet, Defendant Introcaso violated N.J.A.C. 13:35-6.5(b),  N.J.A.C. 12:235-3.8(c), and N.J.S.A. 34:15-128.4 by failing to provide Plaintiff with a copy of the January 13, 2020 Charting Supplemental Charting Notes within 30-days as required by N.J.A.C. 13:35-6.5(c)(1).

108.     N.J.A.C. 12:235-3.8(c) of the WCA provides in relevant part: "The employer shall be required to furnish or make available for inspection and copying all records of medical treatment, examinations and diagnostic studies authorized by the respondent."

109.     In the underlying WCA matter, despite Plaintiff's repeated demands for Defendant Amazon "to furnish or make available for inspection and copying all records" discoverable pursuant N.J.A.C. 12:235-3.8(c), including but not limited to the aforesaid January 8, 2020 dated RFI form, Defendants have intentionally, fraudulently concealed, altered, and/or destroyed, the original unaltered January 8, 2020 dated and signed RFI form evidencing Dr. Nepp's determination that Plaintiff's reported injury is " ☒ Work-Related."

110.     On or about November 2, 2020, Plaintiff discovered that on or about January 13, 2020, Defendants fraudulently concealed and altered medical records evidence, violated N.J.A.C. 13:35-6.5(b), and N.J.S.A. 34:15-128.4 when Defendant Introcaso knowingly participated in a deceitful scheme of creation of the falsified medical records dated January 13, 2020 titled: "Charting Notes"; "WSS", and "RFI" with the intention that Defendant Amazon and/or its third-party insurance administrator, Sedgwick, would rely upon the falsified medical record(s) to bolster Defendant Amazon and Sedgwick's frivolous denial of Plaintiff's WCA claim as a non-compensable non-work-related injury under the WCA.

111.     In the underlying WCA action, Defendant Introcaso intentionally provided Defendant Amazon with his falsified January 13, 2020 Charting Notes which Amazon used and relied upon in its ongoing effort to impair Plaintiff's Motion for Medical and Temporary Benefits filed pursuant to N.J.A.C. 12:2353.2.  A copy of the Jan. 13, 2020, Charting Notes signed by Defendant Introcaso is attached hereto and incorporated by reference as **Exhibit "F"**. (SSN Redacted by Plaintiff)

112.     On or about January 13, 2020, Defendant Introcaso, by phone and/or facsimile, and/or email communicated with John and Jane Does (2-5) and conspired with John and Jane Does (2-5) to conduct a fraudulent examination of Plaintiff, in which Introcaso would conclude, regardless of the facts, and without having physically examined Plaintiff, that Plaintiff had no work-related disability in contradiction to Dr. Nepp's objective examination and diagnosis.

113.     Defendant Introcaso, has never physically examined Plaintiff nor attempted to provide medical treatment to Plaintiff. Despite never physically examining Plaintiff, Defendant Introcaso intentionally created the January 13, 2020, Supplemental Charting Notes ("Charting Notes")  which states the following false statements of fact:

"**CHIEF COMPLAINT:** Working there the past 5 weeks have developed pain in my entire body."

(See January 13, 2020 Charting Notes, attached hereto and incorporated by reference as Exhibit "**F**".)

114.    Proof of Defendant Introcaso's fraud can be gleaned from Plaintiff's signed (blank dated) **Initial Visit "Brief" History (FORM #102NJ)** wherein the Plaintiff answered as follows: "**Complaint: (What is hurt?)** 1. Left-knee/leg   2. Left inner thigh Bruise   3. Starting to feel discomfort & pain right knee/leg area." See **Exhibit "G"** attached hereto and incorporated by reference.  Defendant Introcaso's quoted notes in ¶ 113.   are direct evidence of fraud because Plaintiff never made any such oral or written statement to Defendant Introcaso nor to WorkNet and because Plaintiff's quoted written answer contradicts Defendant Introcaso's quoted fraudulent notes.

115.    Defendant Introcaso's fraudulently altered and/or created January 13, 2020 Supplemental Charting Notes states the following false statements of fact:

"**SUBJECTIVE HISTORY**: ... [P]atient states pain is sharp constant unrelieved by Motrin 600 mg. ... Patient ... denies a particular incident of sudden onset of pain  . . . Patient denies any prior injuries initially but then reports that he's had at least 4 prior auto accidents ... over the past 35 years."

116.    Proof of Defendant Introcaso's fraud is found on Occupation Injury **Form (WN-347)** where Plaintiff answered as follows: "**Pain Description:** ☒ Sharp ... ☐ Constant  ☒ Occasional" (See Exhibit "**G**")   Proof of Defendant Introcaso's fraud can be gleaned from Plaintiff's signed (blank dated) **Initial Visit "Brief" History (FORM #102NJ)** wherein the Plaintiff answered as follows: "**How did this happen?:** *Lifting boxes/Pulling-Pushing cages filled with cardboard boxes, bending, squatting to fit in tight cramped areas to refill corrugated cardboard boxes*." (emphasis added).  See **Exhibit "G."**  Additionally, the Worknet Occupational Injury **Form (WN-346)**, which Plaintiff signed and dated January 7, 2020, contains the question: "**BRIEFLY DESCRIBE HOW YOU GOT HURT AND WHEN THE INJURY OR ILLNESS**

**OCCURRED**.:"  Plaintiff's handwritten answer states: "*Sustain[sic] left thigh bruise on 12-27-30-2019 Tape Machine. Felt pain in left knee/leg as I was walking to pull, push cages of boxes. 1-4-2020.*"  Furthermore, Plaintiff never made any statements or reports to Defendant Introcaso nor to WorkNet about having "at least 4 prior auto accidents requiring treatment over the past 35 years." Defendant Introcaso's notes (Ex. "F") fraudulently misrepresents Plaintiff's certified answer found on Form WN-346 which contradicts Introcaso's false note that "*Patient denies a particular incident of sudden onset of pain*." See Exhibit "G",  Occupation Injury Form WN-346.

117.    Defendant Introcaso's fraudulently altered and/or created January 13, 2020, Supplemental Charting Notes states the following false statements of fact:

"**CURRENT MEDICATIONS**: Noncontributory other than Motrim 600 mg. . . ." See **Exhibit "F"**.

118.    Proof that Defendant Introcaso's Charting Notes fraudulently misrepresents Plaintiff's intake of Motrim 600 mg is evidenced by the undisputed fact that Plaintiff has never ingested nor taken Motrim 600 mg in his life.  Additional proof of fraud is found on the Initial Visit "Brief History Form #102NJ (Exhibit "G") where Plaintiff listed his Current Medications as: "1. Sildenafil."

Thus, the "**CURRENT MEDICATIONS**:" section of the January 13, 2020 Supplemental Charting Notes contain intentionally false statements of fact provided by Defendant Introcaso. See **Exhibit "F."**  Furthermore, Dr. Nepp's January 8, 2020, New Jersey Prescription Blank order for Motrim 600 mg was never filled for Plaintiff by any pharmacy because Defendant Amazon's Third-Party Insurance administrator, Sedgwick CMS-Philadelphia, canceled the Workers' Comp Pharmacy card issued to Plaintiff when Sedgwick fraudulently denied Plaintiff's WCA claims as non-compensable non-work related injuries.  See Exhibit "D", Sedgwick CMS-Philadelphia 01/20/2020 letter at ¶ 4.

119.    Defendant Introcaso's fraudulently altered and/or created January 13, 2020 Supplemental Charting Notes states the following false statements of fact:

"**PAST MEDICAL/SURGICAL/FAMILY HISTORY:** . . . denies ulcers. Work related carpal tunnel syndrome and ulnar neuropathy in 2013 while working for FedEx. Work related head trauma in 2013 while working for FedEx. .... Patient reports at least 4 prior automobile accidents to required treatment.  Patient denies any prior disability or partial disability or permanent disability . . . History of ADD." See **Exhibit** "**F**" at Page: 1.

120.    Defendant Introcaso's notes referencing Plaintiff's "Past Medical/Surgical/Family History" are false because Plaintiff has never been diagnosed with having "ADD" (Attention Deficit Disorder). Furthermore, the Worknet Occupational Injury **Form (WN-347)** which Plaintiff signed and dated January 7, 2020, contradicts Defendant Introcaso's false statement as the form clearly indicates Plaintiff reported that he suffered from ulcers in the year-"1980" (See Ex. "G").    Further, none of the remaining quoted statements asserted by Defendant Introcaso in the "**Past Medical/Surgical/Family History**" section of his Charting Notes are accurate statements that were ever reported and/or disclosed to Defendant Introcaso from Plaintiff in the format in which the quoted statements appear in Defendant Introcaso's Charting Notes.  The quoted Introcaso notes are additional evidence of Defendant Introcaso's willfully negligent misrepresentations and deceitful use of hearsay information received from an unidentified third-party (likely Michael Delporte) whom Defendant Introcaso conspired with to fraudulently misrepresent third-party hearsay information as medical history reports made by Plaintiff during Plaintiff's January 13, 2020 visit to Defendant Introcaso's medical clinic (Worknet) for an X-ray examination that never occurred.

121.    Defendant Introcaso's fraudulently altered and/or created January 13, 2020 Supplemental Charting Notes states the following false statements of fact:

"**DRUG ALLERGIES**: Bactrim as well as pollen and cat dander" (<u>See</u> Ex. "F").  However, the quoted notes are false because neither "Pollen" nor "Cat Dander" are considered "Drug Allergies."

122.　　　Defendant Introcaso's fraudulently altered and/or created January 13, 2020 Supplemental Charting Notes states the following false statements of fact:

"ROS: ...Positive and pertinent negative results of the review of systems were reviewed and all remaining are negative. They include but are not limited to ... hearing loss ..." (Exhibit "F" at Page:1)

123.　　　Proof that Defendant Introcaso's Notes falsely states Plaintiff's ROS indicates negative for "hearing lose" is supported by the **Initial Visit "Brief" History Form #102NJ** Plaintiff completed on January 7, 2020 at 1:30 PM which shows Plaintiff circled "hearing loss"  in response to the question: "ROS-Do you have any of the following:(Circle all that apply)." <u>See</u> Exhibit "G."

124.　　　Defendant Introcaso's fraudulently altered and/or created January 13, 2020 Supplemental Charting Notes states the following false statements of fact:

"**OBJECTIVE EXAMINATION:** Examination of the left knee reveals full range of motion no joint line tenderness no laxity. No crepitus. Full range of Motion of the left knee. Examination of the left medial thigh reveals fading eccymosis 5 x 4 cm with no swelling or tenderness over the medial thigh."

125.　　　Proof that Defendant Introcaso's January 13, 2020 Charting Notes contains false statements of fact is evidenced by the fact, that Defendant Introcaso never physically examined Plaintiff therefore Introcaso never touched Plaintiff's thigh bruise to check for swelling or tenderness. Also, on January 13, 2020 Plaintiff's left-thigh bruise measured greater than 5 x 4 cm in size.

126.　　　Defendant Introcaso's fraudulently altered and/or created January 13, 2020, Supplemental Charting Notes states false statements of fact at the sections labeled and beginning with "**APPEARANCE:**" through "**SKIN:**" The information inserted by Defendant Introcaso is false

because Defendant Introcaso did not physically examine nor visually observe any of Plaintiff's referenced body parts.  Additionally, Dr. Introcaso's false notes about seeing a "fading ecchymosis 5 x 4 cm" bruise on Plaintiff's left medial thigh is self-contradicted by the "**SKIN:**" section of Introcaso's notes which says "**SKIN:** without rashes..." (See Ex. "F" at Page: 2)

127.    Defendant Introcaso's January 13, 2020 dated Supplemental Charting Note contains the following fraudulent misrepresentation/false statement of fact:

"This initial evaluation is considered work related ... Employer and Insurance company understand that they are responsible for payment of this initial evaluation because they sent the patient here for causality evaluation and possible treatment."  "**PLAN:** #2 Orthopedic Supplies/Dressings Dispensed: Advised to ice and heat."  (emphasis added)

128.    Proof of the falsity of Defendant Introcaso's quoted statement in paragraph 127. above, is evidenced by the fact the Plaintiff's visit to Worknet-Pennsauken on January 13, 2020 was not commanded by either Defendant Amazon nor Sedgwick. Plaintiff's "initial" visit and/or evaluation was attempted on January 7, 2020 1:22 PM at WorkNet Occ Med-Burlington by Dr. Paul M. DeJoseph, DO.  That initial evaluation was terminated due to Dr DeJoseph's unethical and unprofessional behavior. Plaintiff's full (initial) physical examination/evaluation was actually conducted by Dr. Mark Nepp at WorkNet Occ Med-Pennsauken on January 8, 2020 10:42 AM to 1:35 PM, whereby Dr. Mark Nepp opined (to the chagrin and disappointment of Amazon and Sedgwick) that Plaintiff sustained a work-related left-knee sprain/strain. In fact, it was Dr. Nepp who instructed Plaintiff to return to Worknet Occ Med-Pennsauken on January 13, 2020, specifically to undergo the statutorily required X-ray (N.J.S.A. 34:15-19) of the Left-knee/leg and not for the purpose of a bogus and fraudulent "initial" evaluation by Defendant Introcaso.

129.      Proof of Defendant Introcaso's fraud is evidenced by the fact that Plaintiff never received any "Orthopedic Supplies/Dressings from Introcaso nor did Introcaso at any time advise Plaintiff to "use ice and heat."  Further proof of Defendant Introcaso's fraud is evidenced by the Health Insurance Claim Form ("HICF") (**FORM 1500**) submitted by Introcaso on January 16, 2020 which reveals Introcaso certified the Plaintiff's/"PATIENT'S CONDITION RELATED TO: a. EMPLOYMENT ☒ YES" for the purpose of payment (See Exhibit "K" at Box 10. a.) in contradiction to Introcaso's notes which fraudulently states Plaintiff injury is not work related. (See Exhibit "F" at page 2).  The HICF FORM 1500 at Exhibit "K" also shows that Defendant Introcaso fraudulently billed under the "Current Procedural Terminology (CPT®) code of  "99214" which means "the provider sees an _established_ patient for an office visit ... and the provider spends 30-39 minutes of total time on the encounter on a single date."  Conversely, CPT code 99204 is the correct CPT code to use when the Provider sees a new patient for an office visit and the provider spends 45-59 minutes of total time on the encounter on a single date.  Further proof of Introcaso's fraud is evidenced by Introcaso's use of diagnosis code:  "S83.92XA" which is the code for " Sprain of unspecified site of left knee, **_initial encounter_**."  However, Plaintiff's diagnosis should have been coded as "S83.XD" which denotes: "Sprain of unspecified site of left knee, subsequent encounter." (Ex. "K" at Box 24.D Line 1).  Defendant Introcaso's HICF #1500 is evidence of insurance fraud.

130.      Attached hereto and incorporated by reference as Exhibit "L" is the January 13, 2020, dated HICF #1500 submitted to Sedgwick on behalf of Dr. Mark Nepp, which truthfully states the Plaintiff's condition as related to "Employment", truthfully states Plaintiff's diagnosis as "S83.92XA" which represents an "initial encounter/evaluation", and the form truthfully states the correct CPT code found under Box D. at Line 1 as 99204 which represents an "Office Visit New Patient." Proof of Defendant Introcaso's fraudulent notes and billing is evidenced by the correctness

and truthfulness of Dr. Nepp's HICF medical record because both authorized physicians cannot have conducted the "initial evaluation" at Defendant Introcaso's Worknet Occ Medicine - Pennsauken clinic.

131.    The Plaintiff's complete, accurate, fact based, unaltered, medical records from all physicians authorized by Defendant Amazon are material to this action, and to the underlying WCA action. Moreover, the fraud in Defendant Introcaso's Supplemental Charting Notes is his fraudulent misrepresentation that Plaintiff reported such disputed medical history facts directly to Defendant Introcaso. Defendant Introcaso knows his January 13, 2020, Charting Notes contain false hearsay information sourced from an unidentified third-party and not directly from Plaintiff.  Defendant Introcaso authored his notes with the intent to deceive or mislead any person as to a diagnosis, medication, treatment and/or medical history concerning the Plaintiff.

132.    As hereinabove alleged, Defendants were at one time the custodians of records of their individual business entities, and as such were entrusted and had a duty to preserve and produce when requested the original unaltered medical records pertaining to Plaintiff, including but not limited to the unaltered January 8, 2020 RFI completed and signed by Dr. Mark Nepp.

133.    Upon information and belief, Defendant Introcaso and John and Jane Does (2-5) are the only known custodians of certified medical records for Worknet and that Plaintiff could not reasonably have obtained access to the said evidence from another source.

134.    The preservation, maintenance, inspection and admission into evidence of such medical records have become necessary and material to the successful prosecution of this action and the underlying WCA action by Plaintiff inasmuch as such records substantiate many of the factual claims being made in this Complaint.

135.    At all relevant times, Defendants Amazon and Introcaso knew the preservation, maintenance, inspection and admission into evidence of such records would be material to the Plaintiff's cost-effective and successful prosecution of his claims for damages and losses alleged herein and for statutory medical treatment and temporary benefits alleged and sought in the underlying WCA action against Defendant Amazon.

136.    Plaintiff is informed, believes, and based thereon alleges, that Defendants, Introcaso, John and Jane Does (2-5) with intent to impair Plaintiff's WCA case, disrupt any litigation, minimize, prevent or deprive Plaintiff of opportunities to inspect, examine and admit such evidence, intentionally withheld, altered deliberately and/or with wanton neglect has caused such records and other discoverable records, documents and surveillance videos assets of Worknet to be destroyed, lost and/or concealed, and as a direct and proximate result, Plaintiff has been or will be prevented and deprived of opportunities to inspect and admit such evidence in legal proceedings.

137.    On September 2, 2022, Plaintiff faxed a written request for Certified Copies of his medical records in the possession of the WorkNet medical clinics managed by Defendant Introcaso. Plaintiff made a similar oral request for his medical records on Jan. 13, 2020.

138.    On September 14, 2022, Plaintiff visited the WorkNet - Pennsauken office to take possession of the documents responsive to Plaintiff's September 2, 2022 records request. At that time, Plaintiff was provided with a 9.5" by 12.5" yellow envelope containing approximately 15-pages of records which was inadequately responsive to Plaintiff's Sept. 2, 2020 medical records request. The package did not include a cover letter nor a certification from the custodian of records or any physician or Medical Assistant attesting to the authenticity of the records under penalty of perjury.

139.    On September 15, 2020, Plaintiff sent a second letter to the WorkNet medical office managed by Defendant Introcaso in which Plaintiff again, requested immediate compliance

with his lawful request for certified copies of his original unaltered medical records file.  See Exhibit "H"

140.     On or about September 30, 2022, Plaintiff received in the U.S. Mail, a second, 9.5" x 12.5" yellow envelope from Worknet containing approximately 39-pages of Plaintiff's alleged medical records in the possession of Defendant Introcaso. There was not a cover letter nor a certification attesting to authenticity enclosed.   The 39-page medical records packet is inadequately responsive to Plaintiff's request for his entire unaltered medical records. The 39-page response **did not** include a certified copy of the original January 8, 2020 RFI form completed and signed by Dr. Mark Nepp which indicates Plaintiff's left-knee injury as work-related. (See Exhibit "A").

141.     The 39-page medical records packet which Plaintiff received from Defendant Introcaso's WorkNet medical clinic on or about September 30, 2022, included a fraudulently altered version of the January 8, 2020 RFI form purportedly completed and signed by Dr. Mark Nepp. (See Exhibit "I").  Proof of fraud is found on Page-1 at Sections 1, 2, II[2], and III[3] because the sections are completely different than the copy of the RFI Form provided to Plaintiff on January 8, 2020.   A side-by-side comparison of the RFI form attached hereto at Exhibit "A" compared to the RFI form attached hereto at Exhibit "I" is suggestive of the Defendants' fraudulent misrepresentation, concealment, and alteration of a medical record in violation of N.J.S.A. 2C:21-4.1.

142.     The 39-page medical records package the Plaintiff received from Defendant Introcaso's WorkNet medical clinic on or about September 30, 2022 included a fraudulently altered version of the:  January 7, 2020, dated **Initial Visit "Brief" History Form #102NJ** (Exhibit "J"). The Form #102NJ contains the Defendant's scribbled notes at the top right hand corner, and at the

---

[2] (Physical Restrictions Related to Job Functions)
[3] (SECTION III: Healthcare Provider Signature and Contact Information)

sections labeled: "**Vitals**:", "**Medical Conditions**?", "**TETANUS**" and "**Date:**" which were not added by Plaintiff. The Defendants' fraudulent changes have been yellow highlighted by Plaintiff. The Defendants' fraudulent medical record alterations are not accompanied by any initials or date/time stamps for identifying the person who edited or added changes to this medical record after the document was signed by Plaintiff on January 7, 2020. The "1-8-20" date written on the document was not added by Plaintiff and is not Plaintiff's handwriting thus voiding Plaintiff's certification.

143.    Plaintiff has been damaged in the underlying WCA action and in this action by having to rely on an evidential record that does not contain the evidence, which the Defendants have intentionally altered, concealed, and/or destroyed.

144.    Defendants Introcaso, John and Jane Does (2-5) have aided and abetted the spoliation and fraudulent concealment of such evidence by Defendants Introcaso and Amazon.

145.    The Defendants' continuing wrongful acts in their further spoliation, alteration, destruction, and fraudulent concealment of such evidence, if any remains, unless enjoined by order of this Court, will continue to cause great and irreparable injury to Plaintiff. Plaintiff has no adequate remedy at law for injuries he is currently suffering, and which are threatened to be suffered from Defendants' intentional fraudulent concealment and/or alteration of evidence.

146.    Defendant Introcaso's conduct in altering Plaintiff's medical records violated N.J.A.C. 13:35-6.5(b), a rule that places physicians under a duty to ensure that "[a]ll treatment records . . . accurately reflect the treatment or services rendered."  Corrections or changes to entries may be made only where the change is clearly identified as such, dated, and initialed by the licensee." N.J.A.C. 13:35-6.5(b)(2).

147.    The actionable conduct alleged hereinabove of those Defendants named in this cause of action was perpetrated with and through fraud, concealment, unlawful alteration, and wanton

malice. Therefore, Plaintiff is entitled to an award of punitive and exemplary damages against each such Defendant in an amount to be proven at trial.

   **WHEREFORE** Plaintiff requests the following relief against Defendants, severally, and jointly as follows:

   a.)   Entry of judgment in Plaintiff's favor against Defendants, for compensatory damages, out-of-pocket expenses,  costs of suit, triple damages, interests and such other further relief as this court deems just and appropriate;

   b.)   Ordering Defendants to identify an appropriate professional to investigate any future complaints of fraudulent concealment, alteration, tampering, and/or destruction of patient medical records;

   c.)   For such other non-monetary relief as this Court may deem just and proper.

<u>**COUNT SIX**</u>
**FRAUD - Alteration, Falsification, and/or Destruction of Medical Records**
**(Against Defendants Lucian J. Introcaso, Amazon, and John and Jane Does (2-5))**

   148.   The Plaintiff realleges and incorporates by reference ¶¶ 1 through 57 and ¶¶  105 thru 147 above as though fully set forth herein.

   149.   On January 13, 2020, at the conclusion of Plaintiff's pre-scheduled appointment at WorkNet Occ Medicine-Pennsauken, Plaintiff requested Defendant's Introcaso and John and Jane Does (2-5) to provide Plaintiff with copies of all medical records created in connection to the January 13, 2020 office visit.

   150.   As a result, of Plaintiff's reliance and Sedgwick's reliance upon the January 13, 2020 WSS and RFI forms which contained the false misrepresentations of fact, Plaintiff sustained economic damages in excess of $3,600 for out of pocket costs, including travel expenses, required to pay for medical expenses related to work related injuries which Defendant Amazon and Sedgwick deemed as non-compensable under the WCA.

151.    The actionable conduct alleged hereinabove of those Defendants named in this cause of action was perpetrated with and through fraud, concealment, unlawful alteration, and wanton malice. Therefore, Plaintiff is entitled to an award of punitive and exemplary damages against each such Defendant.

**WHEREFORE** Plaintiff requests the entry of judgment in his favor against Defendants, severally and jointly, for compensatory damages, costs of suit, triple damages, interest and such other further relief as this court deems just and appropriate.

**COUNT SEVEN**
**Violation of New Jersey Administrative Code Provision**
**Concerning Medical Records, Specifically, N.J.A.C. 13:35-6.5(b)**
**(Against Defendants Lucian J. Introcaso,  John and Jane Does (2-5), and BME)**

152.    The Plaintiff realleges and incorporates by reference Paragraphs 1 through 57 and 105 thru 151 above as though fully set forth herein.

153.    Plaintiff does not have any adequate remedy at law.

154.    N.J.A.C. 13:35-6.5(b) states in relevant part as follows:

Licensees shall prepare contemporaneous, permanent professional treatment records. Licensees shall also maintain records relating to billings made to patients and third-party carriers for professional services. All treatment records, bills and claim forms shall accurately reflect the treatment or services rendered. Treatment records shall be maintained for a period of seven years from the date of the most recent entry.

1. To the extent applicable, professional treatment records shall reflect:

i. The dates of all treatments;
ii. The patient complaint;
iii. The history;
iv. Findings on appropriate examination;
v. Progress notes;
vi. Any orders for tests or consultations and the results thereof;
vii. Diagnosis or medical impression;

viii. Treatment ordered, including specific dosages, quantities and strengths of medications including refills if prescribed, administered or dispensed, and recommended follow-up;

ix. The identity of the treatment provider if the service is rendered in a setting in which more than one provider practices; . . .

2. Corrections/additions to an existing record can be made, provided that each change is clearly identified as such, dated and initialed by the licensee.

3. A patient record may be prepared and maintained on a personal or other computer only when it meets the following criteria:

i. The patient record shall contain at least two forms of identification, for example, name and record number or any other specific identifying information;

ii. An entry in the patient record shall be made by the physician contemporaneously with the medical service and shall contain the date of service, date of entry, and full printed name of the treatment provider. The physician shall finalize or "sign" the entry by means of a confidential personal code ("CPC") and include date of the "signing";

iii. Alternatively, the physician may dictate a dated entry for later transcription. The transcription shall be dated and identified as "preliminary" until reviewed, finalized and dated by the responsible physician as provided in (b)3ii above;

iv. The system shall contain an internal permanently activated date and time recordation for all entries, and shall automatically prepare a back-up copy of the file;

v. The system shall be designed in such manner that, after "signing" by means of the CPC, the existing entry cannot be changed in any manner. Notwithstanding the permanent status of a prior entry, a new entry may be made at any time and may indicate correction to a prior entry;

vi. Where more than one licensee is authorized to make entries into the computer file of any professional treatment record, the physician responsible for the medical practice shall assure that each such person obtains a CPC and uses the file program in the same manner;

vii. A copy of each day's entry, identified as preliminary or final as applicable, shall be made available promptly:

(1) To a physician responsible for the patient's care;

(2) To a representative of the Board of Medical Examiners, the Attorney General or the Division of Consumer Affairs as soon as practicable and no later than 10 days after notice; and

(3) To a patient as authorized by this rule within 30 days of request (or promptly in the event of emergency); and

viii. A licensee shall maintain, as a permanent part of a patient record, any printout of computerized records maintained by the licensee while he or she modified a computer recordkeeping system, so that it complied with the requirements of (b)3i through vii above.

155.     In late October 2022, Plaintiff first discovered Defendants Introcaso and John and Jane Does (2-5),  did improperly backdate medical record notes in connection to Plaintiff's visits to WorkNet on January 7, 2020.  Plaintiff has reviewed portions of Plaintiff's original medical record and the revised medical records (which includes numerous undated additions to the original record) which has been altered by Defendants Introcaso and Does. The additions were made in a manner that (but for the fact that a copy of the record had been made following the Plaintiff's January 7, 2020 visit) would not have alerted a reader of the records that additions had been made to the record. In altering the medical records, Defendants Introcaso and Does violated N.J.A.C. 13:35-6.5 (b) (2) and committed professional misconduct.

156.     The Plaintiff's patient medical records maintained by Defendant Introcaso and Dr. Mark Nepp, fraudulently omits and unlawfully fails to reflect that on January 8, 2020, Dr. Mark Nepp, directed Plaintiff to return to Worknet on January 13, 2020 to undergo x-rays of Plaintiff's left-leg/foot and such an omission from Plaintiff's medical record is a violation of N.J.A.C. 13:35-6.5(b)(1)(vi).

157.     Plaintiff's January 7, 2020 dated "Initial Visit "Brief History" FORM# 102NJ [Compl. Ex. "G"] has been fraudulently and unlawfully altered by Defendants Introcaso and Does by their inserting handwritten "corrections and additions" at the Top Right Hand corner; at the section marked: "Vitals:" and in the lower right hand corner of the form section labeled: "Medical Conditions?"  Defendants Introcaso and Does also unlawfully altered the Patient Signature section by inserting an erroneous date of "1-8-20" as Plaintiff did not sign FORM # 102NJ on January 8, 2020. The insertion of the manually handwritten additions on the FORM #102NJ post Plaintiff's Signature, is a fraudulent attempt to alter the medical record to suggest the physician additions are either entries made by Plaintiff and/or based upon information provided by Plaintiff to support Defendant

Introcaso's January 13, 2013 Charting Notes which suggest Defendant Introcaso physically examined the Plaintiff, when, in fact, Defendant Introcaso, did not physically examine Plaintiff.

158.    Defendants Introcaso and Does actions violate <u>N.J.A.C.</u> 13:35-6.5(b)2 which states in relevant part: "Corrections/additions to an existing record can be made, provided that each change is clearly identified as such, dated and initialed by the licensee. . . ."

159.    Unless restrained and enjoined, Defendants Introcaso and Does are unlawfully altering medical records of Worker's Compensation claimant-patients, including the Plaintiff, and the Defendants Introcaso and Does will continue to unlawfully alter medical records, thereby necessitating multiple lawsuits for such future actions. There is no adequate remedy at law.

160.    Plaintiff is entitled to a judgment declaring that Defendants Introcaso and Does have unlawfully altered medical records by failing their duty of care to maintain patient records in compliance with <u>N.J.A.C.</u> 13:35-6.5(b) et seq.

161.    Plaintiff has exhausted all administrative remedies by New Jersey filing a Consumer Complaint with the Office of the Attorney General, Division of Consumer Affairs | State Board of Medical Examiners. On January 30, 2023, the BME notified Plaintiff that it "did not find there existed a basis to sustain a disciplinary action under the existing laws governing the Board."

### NOTICE TO ATTORNEY GENERAL OF ACTION

162.    A copy of this Complaint shall be mailed to the attorney general of the state of New jersey within 10 days after the filing of this complaint with the court.

**WHEREFORE**, the Plaintiff, prays for judgment against Defendants on COUNT SEVEN for an Order enjoining Defendants from any further violations of <u>N.J.S.A.</u> 13:35-6.5(b). The Plaintiff prays for a further judgment against the governmental agencies, the BME, in enjoining and requiring them to assist in regulating these areas and causing appropriate audits or such other controls as will

be determined herein to safeguard the Plaintiff and the public and to forever ensure that unlawful alteration of medical records no longer occur at the medical facilities owned, managed, and or operated by Defendants Introcaso and Does.


Dated: February 3, 2023                         _____
                                                DARYL MURRAY, Plaintiff acting pro se.

                                                2 Bell Lane
                                                Burlington, New Jersey 08016
                                                (P) 609-481-7900
                                                (E) bpeepsdm@gmail.com

**AMENDED CERTIFICATION PURSUANT TO N.J. Ct. R. 4:5-1(b)(2)**

The undersigned hereby states the matter in controversy between the parties herein is also the subject

of the following action:

Daryl Murray v. Amazon, Division of Law and Public Safety, Division on Civil Rights; NJDCR

Docket No. EC05WB-68011; (LAD claims asserted for unlawful discriminatory disparity in pay and

working hours and for Failure to Accommodate for the period from Dec. 3, 2019 thru July 4, 2020).

The Aforesaid claims are not asserted or at issue in the instant Complaint.

The following parties made need to be added as co-defendants in the future:

1) Paul M. DeJoseph, 609 Walnut St., Palmyra, NJ 08065; 2103 Mt. Holly Rd, Burlington, NJ 08016;
2) Nancy Newhall, 319 Engard Ave., Pennsauken, NJ 08110 • (856) 308-9343;
3) Kathy Leahy, PD Worknet, 9370 Route 130 N., Pennsauken, NJ 08110;
4) Robert Moffa • Workers Comp Manager for Amazon.com ACY2 • Address Unknown;
5) Amazon.com Services Inc. • 410 Terry Ave North, Seattle, WA, USA
6) Select Medical Corporation • P.O. Box 2034, Mechanicsburg, PA 17055, (p) 888-735-6332;
7) Michael Delporte, Sedgwick CMS-Philadelphia, P.O. Box 14517, Lexington, KY 40512-4517;


Further, I know of no other parties that should be made a part of this lawsuit. I recognize my

continuing obligation to file and serve on all parties and the Court an Amended Certification if there

is a change in the facts stated in the complaint I have filed in this action. I further certifiy that

confidential personal identifiers have been redacted from all documents submitted in the future in

accordance with N.J. Ct. R. 1:38-7(b).

Dated:  February 3, 2023                    DARYL MURRAY, Plaintiff acting pro se.

**<u>VERIFICATION</u>**

I, DARYL "CARMELO" MURRAY, of full age, herby certify:

      I am the Plaintiff in the above captioned civil action. I have read the Second Amended Complaint and certify the allegations contained in the Second Amended Complaint are true to the best of my personal knowledge, information and belief.  I ceritify that the foregoing statements are true. I am aware that if any statement made herein is willfully false, I am subject to punishment.


Dated: February 3, 2023            DARYL MURRAY, Plaintiff acting pro se.